# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **MARSHA JACKSON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 3:20-cv-00967-M** |
| **BLUE STAR RECYCLING, LLC,** | § | |
| **CCR EQUITY HOLDINGS ONE, LLC, and** | § | |
| **CABE CHADICK** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## DEFENDANT CCR EQUITY HOLDINGS ONE, LLC'S
## <u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

Respectfully submitted,

GREGORY M. SUDBURY
Texas Bar No. 24033367
ERIC G. CARLSON
Texas Bar No. 24100076
**QUILLING, SELANDER, LOWNDS,**
**WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Phone)
(214) 871-2111 (Fax)
gsudbury@qslwm.com
ecarlson@qslwm.com

**ATTORNEYS FOR DEFENDANT CCR**
**EQUITY HOLDINGS ONE, LLC**

TABLE OF CONTENTS

I.    INTRODUCTION AND FACTUAL BACKGROUND ..................................................... 1

II.   ISSUES TO BE DECIDED BY THE COURT .................................................................. 5

III.  REQUEST FOR JUDICIAL NOTICE ............................................................................ 5

IV.   ARGUMENT AND AUTHORITIES ................................................................................ 7

      A.   Plaintiff's Notice Letter Fails to Satisfy the Jurisdictional Prerequisites, and This
           Case Should be Dismissed. ...................................................................................... 7

           1.   The Notice Letter Fails to Put Mr. Chadick on Notice. ............................. 8

           2.   The Notice Letter Was Not Sent to Chris Ganter. ..................................... 9

           3.   The Notice Letter Does Not Provide Sufficient Notice as to the Imminent
                and Substantial Endangerment. ................................................................ 10

      B.   Plaintiff's Claim is Precluded by the State's Lawsuit. ......................................... 12

      C.   Plaintiff Fails to State a Claim against CCR One. ................................................ 15

           1.   Rule 12(b)(6) Standard for Dismissal. ..................................................... 15

           2.   Even if Plaintiff's claim were not precluded, Plaintiff fails to state a claim
                under 42 U.S.C. § 6972(a)(1)(B). ........................................................... 16

V.    CONCLUSION ............................................................................................................... 22

TABLE OF AUTHORITIES

**Cases.**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................... 15, 16

*Atuahene v. City of Hartford,*
   10 Fed. App'x 33 (2d Cir. 2001).......................................................................... 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................................... 15, 16

*Brod v. Omya, Inc.,*
   653 F.3d 156 (2d Cir. 2011)............................................................................ 11, 12

*City of Imperial Beach v. Int'l Boundary & Water Comm'n, United States Section,*
   356 F. Supp. 3d 1006 (S.D. Cal. 2018)................................................................... 20

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496 (5th Cir. 2000) ............................................................................... 6

*Consol. Companies, Inc. v. Union Pac. R. Co.,*
   499 F.3d 382 (5th Cir. 2007) .............................................................................. 16

*Cox v. City of Dallas,*
   256 F.3d 281 (5th Cir. 2001) .............................................................................. 20

*Ctr. for Biological Diversity v. United States Forest Serv.,*
   925 F.3d 1041 (9th Cir. 2019) ............................................................................. 21

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,*
   629 F.3d 387 (4th Cir. 2011) .............................................................................. 11

*Glazer v. Am. Ecology Envtl. Services Corp.,*
   894 F. Supp. 1029 (E.D. Tex. 1995)...................................................................... 12

*Greenup v. Estate of Richard,*
   No. 2:19-CV-07936-SVW-AGR, 2019 WL 8643875 (C.D. Cal. Dec. 13, 2019)............. 17, 21

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,*
   484 U.S. 49, 108 S. Ct. 376, 98 L. Ed. 2d 306 (1987)...................................... 12, 13

*Hallstrom v. Tillamook County,*
   493 U.S. 20 (1989)....................................................................................... 7, 10

*Hinds Investments, L.P. v. Angioli,*
   654 F.3d 846 (9th Cir. 2011) .......................................................... 17, 19, 20, 21

*Hudson Riverkeeper Fund, Inc. v. Harbor at Hastings Associates,*
   917 F. Supp. 251 (S.D.N.Y. 1996) ....................................................................... 13

*In re Katrina Canal Breaches Litig.,*
   495 F.3d 191 (5th Cir. 2007) ............................................................................... 6

*Interfaith Cmty. Org. v. Honeywell Intern., Inc.,*
   263 F. Supp. 2d 796 (D.N.J. 2003), aff'd, 399 F.3d 248 (3d Cir. 2005)................... 20

*Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.,*
   567 F.3d 182 (5th Cir. 2009) .............................................................................. 15

*Lone Star Fund V (U.S.), L.P. v. Barclay's Bank PLC,*
   594 F.3d 383 (5th Cir. 2010) .............................................................................. 15

*Miller v. D.C. Water and Sewer Auth.*,
    2018 WL 4762261 (D.D.C. Oct. 2, 2018) (unpublished) .................................................. 10, 11
*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007) ............................................................................................ 6
*North & South Rivers Watershed Ass'n v. Scituate*,
    949 F.2d 552 (1st Cir.1991) ............................................................................................ 14
*PMC, Inc. v. Sherwin-Williams Co.*,
    151 F.3d 610 (7th Cir. 1998) .......................................................................................... 13
*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ...................................................................................... 18
*Spivey v. Robertson*,
    197 F.3d 772 (5th Cir. 1999) .......................................................................................... 5
*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*,
    531 S.W.3d 829 (Tex. App.—Corpus Christi 2017, no pet.) ........................................ 19
*Supporters to Oppose Pollution, Inc. v. Heritage Group*,
    973 F.2d 1320 (7th Cir. 1992) ................................................................................... 13, 14
*Sycamore Indus. Park Assoc. v. Ericsson, Inc.*,
    546 F.3d 847 (7th Cir. 2008) ..................................................................................... 17, 20
*Tellabs, Inc. v. Makor Issues & Rights*, Ltd.,
    551 U.S. 308 (2008) ........................................................................................................ 6
*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir. 1993) .......................................................................................... 6
*Walker v. TDY Holdings, L.L.C.*,
    135 F. Supp. 2d 787 (S.D. Tex. 2001) ........................................................................... 10
*Woolum v. City of Dallas, Texas*,
    No. 3:18-CV-2453-B-BN, 2019 WL 2604125 (N.D. Tex. May 24, 2019), *report and
    recommendation adopted*, No. 3:18-CV-2453-B-BN, 2019 WL 2601822 (N.D. Tex. June 25,
    2019) ............................................................................................................................ 18

Statutes.
40 C.F.R. § 254 ...................................................................................................................... 7
40 C.F.R. Part 261 ............................................................................................................ 11, 16
42 U.S.C. § 6972 ........................................................................................................ 7, 9, 16, 20
42 U.S.C. § 9607 .................................................................................................................. 21
80 C.F.R. 63691, 63692-63693 ............................................................................................ 12
Tex. Bus. Orgs. Code § 101.106(b) ..................................................................................... 18

Defendant CCR Equity Holdings One, LLC ("CCR One") files this Brief in Support of Its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and respectfully shows the Court as follows:

## I.      INTRODUCTION AND FACTUAL BACKGROUND

On April 20, 2020, Plaintiff filed her Complaint, asserting claims pursuant to 42 U.S.C. § 6972(a)(1), a citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"). Plaintiff seeks injunctive relief requiring Defendants to remove alleged solid and hazardous waste located on property owned by CCR One. Although Plaintiff identifies the address 9527 S. Central Expressway, Dallas, Texas, discrepancies in the public records prevent identification of the site by reference to that or any specific address. For the sake of clarity, CCR One owns the real property described in the Special Warranty Deed with Vendors Lien that was recorded in Dallas County, Texas on April 12, 2018, Instrument No. 201800096174, as follows:

BEING all that certain lot, tract, or parcel of land situated in the L. Dixon Survey, Abstract Number 380, in the City of Dallas, Dallas County, Texas, and being the remainder of that same tract of land described by deed to Comet Auto Salvage, Inc. as recorded under Volume 2002180, Page 2530, Official Public Records of Dallas County, Texas, (O.P.R.D.C.T.), and being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod with cap stamped, "Shields & Lee" found for the east corner of the herein described tract, same being the east corner of said Comet Auto Salvage tract (2002180/2530), and being the north corner of a tract of land described by deed to Brown Family Lewisville Railroad Family First, LP as recorded under Instrument Number 201400045413, (O.P.R.D.C.T.), said point also being in the present southwest line of S. Central Expressway;

THENCE South 60 degrees 05 minutes 19 seconds West, with the southeast line of said Comet Auto Salvage tract (2002180/2530), and with the northwesterly line of said Brown Family tract, a distance of 581.33 feet to a 1/2 inch iron rod with yellow cap stamped, "Arthur Surveying Company" (ASC) set for corner, same being the west corner thereof, and being the south corner of said Comet Auto Salvage tract (2002180/2530), said point also being in the northeasterly line of a tract of land described by deed to Texas Power and Light Company as recorded under Volume 70241, Page 624, (O.P.R.D.C.T.), from which a found "60D" nail bears South 24 degrees 00 minutes 35 seconds East a distance of 3.30 feet;

THENCE North 35 degrees 37 minutes 21 seconds West, with a southwesterly line of said Comet Auto Salvage tract (2002180/2530), and with the northeasterly line of said Texas Power and Light Company tract, a distance of 254.18 feet to a 1/2 inch iron rod with ASC cap set for corner, same being a northwest corner of said Comet Auto Salvage tract (2002180/2530), and being the southwest corner of G.N. Phillipi Subdivision, an addition to the City of Dallas, Dallas County, Texas, according to the plat recorded under Volume 2, Page 1228, Plat Records of Dallas County, Texas, (P.R.D.C.T.), from which a found "60D" nail bears South 75 degrees 15 minutes 57 seconds East a distance of 10.49 feet;

THENCE North 40 degrees 08 minutes 40 seconds East, a northwesterly line of said Comet Auto Salvage tract (2002180/2530), and with the southeasterly line of said G.M. Phillipi Subdivision, a distance of 263.18 feet to a 1/2 inch iron rod with ASC cap set for corner, same being the southeast corner thereof, and being the southwest corner of a tract of land described by deed to Almira Industrial and Trading Corporation as recorded under Instrument Number 20140028765, (O.P.R.D.C.T.);

THENCE North 76 degrees 27 minutes 38 seconds East, with a southerly line of said Almira tract, a distance of 65.62 feet to a 1/2 inch iron rod with ASC cap set for corner, same being a southerly corner thereof;

THENCE North 55 degrees 36 minutes 43 seconds East, with a southeasterly line of said

Almira tract, a distance of 290.64 feet to a 1/2 inch iron rod found for corner, same being the east corner thereof, said point also being in the southwesterly line of said S. Central Expressway;

THENCE South 30 degrees 59 minutes 20 seconds East, with the easterly line of said Comet Auto Salvage tract (2002180/2530), and with the southwesterly line of said S. Central Expressway, a distance of 346.94 feet to THE POINT OF BEGINNING and containing 4.358 acres of land, more or less.

(the "Property"). Ex. A, App. 1-6. The Property is located approximately .3 miles from the McCommas Bluff Landfill.

Though CCR One owns the Property, Blue Star Recycling, LLC ("Blue Star") was responsible for operations at the Property. As indicated in the Complaint, CCR One leased the

Property to Blue Star as soon as it purchased the Property. CCR One was not involved in the operations at the Property, nor did it actively handle, treat, store, transport, or dispose of any material at the Property. CCR One merely owns the Property.

After Blue Star leased the Property from CCR One, it began accepting shingles from contractors and other entities. Blue Star accepted the shingles, processed them into recycled asphalt shingles (RAS), and sold the RAS. Unbeknownst to CCR One, because demand for the RAS lagged behind the amount of shingles Blue Star received, shingles and RAS began to accumulate at the Property.

On December 14, 2018, the City of Dallas ("City") filed suit against Blue Star, CCR One, and Almira Industrial and Trading Corp. (the owner of an adjacent property Blue Star leased on which shingles and RAS were also located) seeking injunctive relief to remove the shingles and shingle material from the properties Blue Star leased. Judge Slaughter of the 191st District Court for Dallas County, Texas subsequently entered a temporary restraining order and on April 10, 2019, a temporary injunction requiring Blue Star, but not CCR One, to remove the shingles from the Property and preventing Blue Star from accepting additional material. Ex. E, App. 48-50; Ex. F, App. 51-53. After Blue Star failed to comply with the state court's injunction and was held in contempt, the City renewed its request to the court to enjoin CCR One to remove the shingles and shingle material from the Property. Although a hearing was held on February 13, 2020, the court has not entered an injunction against CCR One.

On December 17, 2019, because Blue Star breached its lease with CCR One in multiple respects, CCR One terminated Blue Star's right to occupy the leased premises and engaged the City, and subsequently the State, in discussions regarding how to best resolve the situation. Since

then, CCR One has been working diligently to resolve the situation created by Blue Star's operation.

On March 11, 2020, the State of Texas ("State") filed its Original Petition in Intervention against Blue Star, CCR One, Almira, and Chris Ganter. Ex. B, App. 7-21. The State asserts causes of action under the Texas Solid Waste Disposal Act ("TSWDA") seeking, *inter alia*, to require the defendants in the state court action, including CCR One, to remove the shingles from the properties on which Blue Star operated – the same relief Plaintiff seeks. *Id.*

Because RCRA requires a potential plaintiff in a citizen suit to provide notice of the alleged endangerment to the Administrator of the Environmental Protection Agency, the State of Texas, and "any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B)" ninety days prior to commencing an action under Section 6972(a)(1)(B), Plaintiff alleges notices were sent to CCR One, Blue Star Recycling, LLC, the Administrator of the EPA and the Executive Director of the Texas Commission for Environmental Quality. Plaintiff does not allege she sent notice of the alleged endangerment to Chris Ganter, despite alleging Ganter "contributed to the illegal disposal of solid waste at the Shingle Mountain Site." Doc. 1, p. 4, ¶ 12.

A "Notice of Intent to File Citizen's Suit, 42 U.S.C. § 6972" (the "Notice Letter") dated November 26, 2019 was sent to CCR One. Ex. C, App. 22-26. The Notice Letter is deficient in multiple respects. It fails to put Mr. Chadick and CCR One on notice because it does not advise that Plaintiff intends to sue either CCR One or Mr. Chadick, nor does it identify with any specificity how CCR One or Mr. Chadick contributed to the handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. The Notice Letter also fails to provide

adequate notice of the alleged imminent and substantial endangerment. Moreover, because Plaintiff did not send a copy of the Notice Letter to Ganter, she failed to comply with 42 U.S.C. § 6972(b)(2)(A). Plaintiff's failure to provide the requisite notice to the requisite parties means this Court lacks subject matter jurisdiction, and this matter should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiff's suit should also be dismissed because it is precluded by the State's pending action. The State's action relates to the state court defendants' alleged collection, handling, storage, processing, or disposal of material that is allegedly causing "the endangerment of the public health and welfare." Ex. B, App. 12-13. Because the State is diligently prosecuting a suit seeking the same relief Plaintiff seeks, her suit is barred, and her claims should be dismissed.

Plaintiff also fails to allege any facts specific to CCR One that would indicate it was actively involved in or had any control over the alleged solid waste being deposited at the Property. Because Plaintiff fails to allege conduct by CCR One that would entitle her to relief under RCRA, her claims against CCR One should be dismissed pursuant to Rule 12(b)(6).

## II.       ISSUES TO BE DECIDED BY THE COURT

1. Whether the Court has subject matter jurisdiction in light of the deficiencies in Plaintiff's Notice required by 42 U.S.C. § 6972(b)(2)(A).

2. Whether the State's prosecution in state court precludes Plaintiff's claim.

3. Whether Plaintiff states any plausible claim against CCR One upon which relief may be granted.

## III.       REQUEST FOR JUDICIAL NOTICE

In determining the validity of a Rule 12(b)(6) motion, a court cannot look beyond the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See In re Katrina Canal Breaches Litig.,*

495 F.3d 191, 205 (5th Cir. 2007). Documents "'attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Accordingly, CCR One respectfully asks the Court to take judicial notice of the following documents that are available in the public record, referenced in the Complaint and central to Plaintiff's claims, and are attached to the contemporaneously filed Appendix in Support of Defendant CCR One's Brief in Support of its Motion to Dismiss:

| | | |
|---|---|---|
| Exhibit A: | Certified Copy of Special Warranty Deed from Comet Auto Salvage, Inc. to CCR Equity Holdings One, LLC recorded in the real property records of Dallas County, Texas as instrument no. 201800096174; | App. 1-6 |
| Exhibit B: | The State of Texas's Original Petition in Intervention and Request for Temporary and Permanent Injunctions filed March 11, 2020 in Cause No. DC-18-18751 in the 191st District Court, Dallas County, Texas; | App. 7-21 |
| Exhibit C: | Letter Re: Notice of Intent to File Citizen's Suit, 42 U.S.C. § 6972 dated November 26, 2019; | App. 22-26 |
| Exhibit D: | Commercial Lease between CCR Equity Holdings One, LLC and Blue Star Recycling, LLC, dated March 8, 2018; | App. 27-47 |

| | | |
|---|---|---|
| Exhibit E: | Modified Temporary Restraining Order entered March 25, 2019 in Cause No. DC-18-18751 in the 191st District Court, Dallas County, Texas; | App. 48-50 |
| Exhibit F: | Temporary Injunction entered April 10, 2019 in Cause No. DC-18-18751 in the 191st District Court, Dallas County, Texas; | App. 51-53 |
| Exhibit G: | Excerpts from Reporter's Record of Hearing on Motion for Contempt and Status Conference, November 22, 2019 in Cause No. DC-18-18751 in the 191st District Court, Dallas County, Texas. | App. 54-60 |

## IV.   ARGUMENT AND AUTHORITIES

### A.   Plaintiff's Notice Letter Fails to Satisfy the Jurisdictional Prerequisites, and This Case Should be Dismissed.

Certain statutory requirements must be met in order to bring a citizen suit under the RCRA based on an imminent and substantial endangerment to health or the environment. As set forth in 42 U.S.C. § 6972(b)(2)(A), no such action can be commenced until ninety (90) days after notice has been provided to the U.S. Environmental Protection Agency ("EPA") Administrator, the relevant State, and "any person alleged to have contributed or to be contributing to the" endangerment. Additionally, under 42 U.S.C. § 6972(b)(2)(B), no such action can be commenced if certain actions have already been taken or certain orders have already been entered to address the alleged problem(s). Here, these jurisdictional prerequisites have not been met, and this case should be dismissed.[1]

---

[1] CCR One acknowledges that the case law is far from clear as to whether a failure to satisfy the statutory prerequisites for RCRA citizen suits provides a basis for dismissal under Rule 12(b)(1) or Rule 12(b)(6). *See, e.g., Hallstrom v. Tillamook County*, 493 U.S. 20, 31-33 (1989) (affirming Ninth Circuit opinion dismissing based on lack of subject matter jurisdiction but also noting that the Court did not to determine whether the requirements were "jurisdictional in the strict sense of the term" because dismissal would be required either way). Regardless of the lens in which this Court chooses to view these requirements, the end result here is the same: Plaintiff has failed to satisfy these requirements, and the case should be dismissed.

The requirements for what must be included in a RCRA citizen suit notice are found in 40 C.F.R. § 254.3, which provides that the notice must contain: (1) "sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated"; (2) "the activity alleged to constitute a violation"; (3) "the person or persons responsible for the alleged violation"; (4) "the date or dates of the violation"; and (5) "the full name, address, and telephone number of the person giving notice." Although Plaintiff sent CCR One the Notice Letter, it is inadequate for a variety of reasons, and does not satisfy the relevant criteria.

### 1.       The Notice Letter Fails to Put Mr. Chadick on Notice.

Mr. Chadick, who does not own the relevant property and had no personal involvement in the handling, storage, treatment, transportation, or disposal of any waste, is being sued *personally* by Plaintiff. And yet, with respect to Plaintiff's intention to bring a RCRA citizen suit, the Notice Letter provides only that Plaintiff "is giving notice of intent to file a Citizens' Suit *against Blue Star Recycling, LLC and its managing members* pursuant to 42 U.S.C. § 6972(a)(1)(B), [RCRA]. [Plaintiff] intends to file a Citizens' Suit at the expiration of the notice period set forth in 42 U.S.C. § 6972." Ex. C, App. 22 (emphasis added). There is no mention whatsoever of any forthcoming citizen suit against Mr. Chadick personally or for that matter, CCR One. *Id.*, App. 22-26.

Moreover, in the light of the obvious fact that Plaintiff has no basis for *personal* liability against Mr. Chadick, his name is not once even mentioned in the entire body of the Notice Letter. Instead, Plaintiff merely makes a few references to the CCR Equity Holdings One, LLC "managing member" or "governing member." *Id.*, App. 23, 25.  In conclusory fashion, the Notice Letter states that "CCR Equity Holdings One, LLC and its governing member contributed to the . . . imminent and substantial endangerment . . . by consenting to Blue Star Recycling, LLC['s] use of the

property and for allowing the use of the property" in a manner that creates an imminent and substantial endangerment. *Id.*, App. 23.

Thus, the crux of the "notice" provided to Mr. Chadick is that he personally allowed Blue Star to improperly operate on the Property. Merely owning the relevant property is insufficient for RCRA citizen suit liability. *See infra* pp. 19-20. However, even if it were sufficient, the Notice Letter itself clearly states that "9527 S. Central Expressway [] is owned by CCR Equity Holdings One, LLC." Ex. C, App. 22. Regardless of whether Mr. Chadick is CCR Equity Holdings One, LLC's managing or governing member, Mr. Chadick does not personally own the Property, and he cannot personally consent to any such use of the Property. Therefore, the Notice Letter provides no basis for suing Mr. Chadick personally.

As is clear from the Notice Letter and the Complaint itself, Doc. 1, *passim*; Ex. C, App. 22-26, *passim*. the only concrete allegation against Mr. Chadick is that he is the managing or governing member of CCR Equity Holdings One, LLC. Such conduct could not be viewed as contributing to any imminent and substantial endangerment. The Notice Letter therefore failed to provide Mr. Chadick with a sufficient explanation as to any activity by him *personally* that could be viewed as a violation as required by 40 C.F.R. § 254.3.

While CCR One understands courts often provide plaintiffs with lenient or favorable interpretations of allegations found in their notice letters, the Notice Letter here is woefully deficient with respect to Mr. Chadick, and the Complaint should be dismissed accordingly.

### 2. <u>The Notice Letter Was Not Sent to Chris Ganter.</u>

The required notice must be sent to "any person alleged to have contributed or be contributing to" the endangerment. 42 U.S.C. § 6972(b)(2)(A). The Complaint explicitly states "Chris Ganter contributed to the illegal disposal of solid waste at the Shingle Mountain site." Doc. 1, p. 4, ¶ 12. Thus, under the plain language of the statue, the Notice Letter should have been sent

to Chris Ganter. However, no such Notice Letter was sent to Mr. Ganter. *See* Doc. 1, p. 11-12, ¶¶ 36-37 (explaining that the Notice Letter was mailed to Blue Star, CCR Equity Holdings One, and Mr. Chadick, but providing no explanation as to the failure to notify Mr. Ganter or deliver the Notice Letter to him).

Compliance with the RCRA citizen suit notice requirements is not optional. *See Walker v. TDY Holdings, L.L.C.*, 135 F. Supp. 2d 787, 789 (S.D. Tex. 2001) (explaining that "pre-suit notice is a 'mandatory condition[] precedent to commencing suit under the RCRA citizen suit provision'") (quoting *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989)). And all "persons" alleged to be contributing to the endangerment must be served with the relevant notice letter. *See, e.g., Miller v. D.C. Water and Sewer Auth.*, 2018 WL 4762261, at *6-7 (D.D.C. Oct. 2, 2018) (unpublished) (explaining that RCRA citizen suit plaintiffs must provide notice "to *each* alleged violator" and finding that the RCRA citizen suit was therefore procedurally barred by plaintiffs' failure to do so) (emphasis in original).

Here, Mr. Ganter clearly falls within the group of persons alleged to have contributed to the alleged endangerment. Therefore, Plaintiff's failure to notify Mr. Ganter represents another independent basis for dismissing the Complaint.

### 3.    The Notice Letter Does Not Provide Sufficient Notice as to the Imminent and Substantial Endangerment.

The Notice Letter does not adequately identify what specific chemicals or wastes involved represent an imminent or substantial endangerment. The Notice Letter alleges there is an "illegal solid waste landfill contain[ing] at least 198,000 cubic yards of unprocessed asphalt shingle material and roofing waste material at the landfill site"; that Blue Star "caused the discharge of the industrial waste and other pollutants into the stormwater system"; and that the City of Dallas alleged Dallas City Code violations relating to protecting public health. Ex. C, App. 22-25.

However, the Notice Letter does not provide sufficient detail as to the "pollutants," materials or risks in question. This is too vague under the applicable case law.

In *Brod v. Omya, Inc.*, 653 F.3d 156, 168 (2d Cir. 2011), the plaintiff filed a citizen suit alleging that the defendant was engaging in dumping of facility processing waste into unlined pits that was seeping into groundwater, and that this contamination of groundwater represented an imminent and substantial endangerment. Despite this description, the Second Circuit found the notice letter to nonetheless be insufficient because it did not identify the specific toxic chemical (aminoethylethanolamine or "AEEA") that was contained in the waste and thus caused the imminent and substantial endangerment. *Id.* (stating that by failing to "identify AEEA as a waste contaminant, [Plaintiff] did not include 'sufficient information' as required). *See also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 398-401 (4th Cir. 2011) (holding that notice letter in Clean Water Act suit involving "an identical statutory notice requirement" was inadequate with respect to plaintiff's failure to identify specific pollutants being discharged).

Similarly here, Plaintiff has only identified the materials in question as "unprocessed asphalt shingle material and roofing waste material" and "industrial waste and other pollutants." Ex. C, App. 22-23. No specifics are provided as to any contaminant that could represent an imminent and substantial endangerment. There is no specific identification of any toxic or hazardous chemical or material that would create a substantial or imminent endangerment. And unprocessed asphalt shingle and roofing material is not a hazardous waste as defined by RCRA. *See* 40 C.F.R. Part 261; *see also Miller v. D.C. Water and Sewer Auth.*, 2018 WL 4762261, at *8 (D.D.C. Oct. 2, 2018) (unpublished) (finding that plaintiffs' arguments to support its imminent and substantial endangerment claims were "untenable" where sewage was not regulated as a waste under RCRA).

As the *Brod* court explained, this failure is fatal, 653 F.3d at 168, and the Complaint should be dismissed.

**B.      Plaintiff's Claim is Precluded by the State's Lawsuit.**

RCRA's citizen suit provision "is meant to supplement rather than to supplant governmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S. Ct. 376, 383, 98 L. Ed. 2d 306 (1987). To that end, 42 U.S.C. § 6972(b)(2)(C)(i) prohibits an action "brought under subsection (a)(1)(B) of this section if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment has commenced and is diligently prosecuting an action under subsection (a)(1)(B)." The State's action against CCR One in state court precludes Plaintiff's claim.

Before Plaintiff filed her Complaint, the State commenced an action seeking relief identical to that which Plaintiff seeks, satisfying the requirement that the State's action seek to restrain or abate "conditions which may have contributed … to the activities which may present the alleged endangerment."  Ex. B, App. 15-18. The diligence of the State's prosecution is presumed. *Glazer v. Am. Ecology Envtl. Services Corp.*, 894 F. Supp. 1029, 1037 (E.D. Tex. 1995).

Because the State, through the Texas Commission on Environmental Quality ("TCEQ"), is authorized to administer the RCRA program and has enforcement responsibilities under its hazardous waste program, the TSWDA, in lieu of RCRA, *see, e.g.*, 80 C.F.R. 63691, 63692-63693 (detailing the history of Texas's authorization and approving revisions to the program), and the State's action against CCR One is brought pursuant to the TSWDA and related regulations which prohibit the "collection, handling, storage, processing, or disposal" of solid waste and seeks to abate the alleged "endangerment of the public health and welfare," Ex. B, App. 12-13, it is "the equivalent of one brought under the RCRA" and therefore bars Plaintiff's suit. *Hudson*

*Riverkeeper Fund, Inc. v. Harbor at Hastings Associates*, 917 F. Supp. 251, 256 (S.D.N.Y. 1996); *see PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618 (7th Cir. 1998) (noting that Section 6972(a)(1)(B) bars a citizen's suit if the State has commenced an action in federal *or state court*).

If Plaintiff's suit proceeds, she can second-guess the State's litigation decisions and strategy, hamstringing its ability to effectively negotiate, coordinate, and resolve the issue. Plaintiff's suit threatens to intrude on the State's enforcement of the TSWDA, which operates in lieu of RCRA in Texas, and would curtail the State's discretion in addressing and enforcing its solid waste laws and policy.

Discussing the Clean Water Act, which has very similar citizen suit provisions, the Supreme Court observed:

> Suppose that the Administrator identified a violator of the Act and issued a compliance order.... Suppose further that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise would not be obliged to take. If citizens could file suit ... in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably.

*Gwaltney*, 484 U.S. at 60-61. The Supreme Court went on to conclude that Congress cannot have intended to allow citizen suits to intrude on the government's strategy and discretion. *Id.* at 61. The Supreme Court's logic applies with equal force to RCRA and state enforcement. As the Seventh Circuit observed, allowing a citizen suit to proceed when the government has already sued simply because the State "does not sue the persons, or use the theories, the private plaintiff prefers would strip [the government] of the control the statute provides." *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1324 (7th Cir. 1992).  Similarly, the First Circuit, addressing the Clean Water Act provisions, concluded citizens should not be allowed to second guess a public agency's litigation decisions by filing an independent suit. *North & South Rivers*

*Watershed Ass'n v. Scituate,* 949 F.2d 552, 558 (1st Cir.1991) ("Merely because the State may not be taking the precise action [the private plaintiff] wants it to or moving with the alacrity [that plaintiff] desires does not entitle [the private plaintiff] to injunctive relief.").

CCR One is working collaboratively with the State to address the issues at the Property. In recent weeks, CCR One has moved several truckloads of material across the street to the McCommas Bluff Landfill with the City and State's blessing. CCR One and the State are also working together to identify and develop sites on which to use the recyclable material to construct parking lots or to otherwise dispose of the material.

A defendant's ability to limit its potential liability is often its strongest motivation to settle. If Plaintiff's suit proceeds, it will undercut the progress CCR One and the State have made or will make towards a cooperative resolution, and the collaboration and negotiations would be for naught if this suit negates them. As long as this suit is proceeding, any agreement between CCR One and the State lacks finality. CCR One cannot reach an agreement with the State that defines and limits its liabilities and obligations with respect to the Property. Settling with the State while Plaintiff's suit continues is akin to a settlement agreement without a release. And even if this Court would ultimately defer to any such agreement between CCR One and the State by concluding, once a resolution is reached, that such an agreement moots the present suit, the risk of an injunction being issued in this case in the interim and the possibility that the Court does *not* defer when the time comes substantially reduce each party's incentive to negotiate. As the Seventh Circuit observed, "[a]n Administrator unable to make concessions is unable to obtain them. A private plaintiff waiting in the wings then is the captain of the litigation." *Supporters to Oppose Pollution, Inc.*, 973 F.2d at 1324. Plaintiff should not be the captain of the litigation as long as the State is diligently

prosecuting its action, and her claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## C.      Plaintiff Fails to State a Claim against CCR One.

### 1.      Rule 12(b)(6) Standard for Dismissal.

To survive a motion to dismiss based on Rule 12(b)(6), a plaintiff must plead sufficient facts to state "a legally cognizable claim that is plausible." *Lone Star Fund V (U.S.), L.P. v. Barclay's Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The pleading standard set forth by the United States Supreme Court does not "require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citations omitted). While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the court can draw a reasonable inference from the pleadings that the defendant is liable for the misconduct alleged." *Id.* at 556. The factual allegations must be sufficient to raise the right to relief above a speculative level. *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182, 184 (5th Cir. 2009). "Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief." *Twombly*, 550 U.S. at 557

**2.      Even if Plaintiff's Claim Were Not Precluded, Plaintiff Fails to State a Claim under 42 U.S.C. § 6972(a)(1)(B).**

To prevail under 42 U.S.C. § 6972(a)(1)(B), a plaintiff must establish the following elements:

1.      The defendant is a person, including, but not limited to, one who was or is a generator of solid or hazardous waste, or one who was or is an owner or operator of a solid or hazardous waste treatment, storage or disposal *facility*.

2.      The defendant has contributed to, or is contributing to, the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and

3.      The solid or hazardous waste may present an imminent and substantial endangerment to human health or the environment.

*Consol. Companies, Inc. v. Union Pac. R. Co.*, 499 F.3d 382, 386 (5th Cir. 2007) (citing 42 U.S.C. § 6972(a)(1)(B)) (emphasis in original). Plaintiff has not alleged facts sufficient to support these elements as to CCR One, and therefore the Complaint should be dismissed.

> i.      *Plaintiff Has Not Alleged Facts Sufficient to Show the Shingles Are Solid Waste.*

The Court is not bound to accept a legal conclusion couched as a factual allegation, which is the extent of Plaintiff's allegations relating to the characterization of the material at the Property. *Twombly*, 550 U.S. at 555. Plaintiff repeatedly calls the material solid waste but does not allege any facts to support such a conclusion. In fact, the shingles are recyclable material. Plaintiff even alleges Defendants processed the shingles into recyclable material and sold it. Doc. 1, p. 3, ¶ 9. Recyclable material is excluded from RCRA's definition of solid waste. *See* 40 C.F.R. § 261.2(e). Plaintiff's conclusory allegations that the shingles and RAS are solid waste are exactly the type of naked assertions devoid of further factual development deemed insufficient by *Iqbal*. Because Plaintiff must establish the material is solid or hazardous waste but has failed to allege facts sufficient to support such a conclusion, she fails to state a claim.

ii.   *Plaintiff Fails to Allege CCR One Is a "Contributor" under RCRA.*

Plaintiff's claim against CCR One under 42 U.S.C. § 6972(a)(1)(B) requires she establish it contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of solid waste. A "contributor" defendant is only liable under Section 6972(a)(1)(B) if it has or had "some <u>active function</u> in creating, handling, or disposing of the waste." *Greenup v. Estate of Richard,* No. 2:19-CV-07936-SVW-AGR, 2019 WL 8643875, at *1 (C.D. Cal. Dec. 13, 2019) (citing *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 851 (9th Cir. 2011)) (emphasis added). Thus, Plaintiff must allege CCR One is "actively involved in or ha[s] some degree of control over the waste disposal process." *Hinds*, 654 F.3d at 851 (noting the statute speaks in active terms and therefore requires "active functions with a direct connection to the waste itself."); *accord Sycamore Indus. Park Assoc. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008) ("The vast majority of courts that have considered this issue read RCRA to require affirmative action rather than merely passive conduct[.]"). Plaintiff's allegations are insufficient.

a.   Plaintiff's Blanket Allegations against All Defendants Should Be Disregarded.

Throughout the Complaint, Plaintiff makes allegations regarding all Defendants, collectively, without identifying which defendant allegedly did what. For example, Plaintiff alleges "Defendants accepted solid waste at the site[.]" Doc. 1, p. 1, ¶ 1. Plaintiff also alleges "Defendants intended to profit from the revenue of disposal fees for accepting loads of waste…" despite the fact that CCR One simply collected flat rent payments from Blue Star and did not have a direct financial interest in the revenue generated by Blue Star. Doc. 1, p. 4, ¶ 13; Ex. D, App. 42. Similarly, Plaintiff alleges "Defendants lured the trucks loaded with shingles to dump the waste at the Shingle Mountain site by promising that they would avoid the lengthy wait time to deposit loads at McCommas Bluff landfill." Doc. 1, p. 3, ¶ 9. Plaintiff also repeatedly makes the wholly

conclusory allegation that Defendants, collectively, contributed to the accumulation of solid waste at the Property.

As this court has held, "when the plaintiff's complaint uses blanket terms covering all the defendants, by lumping them together or collectively referring to them as 'Defendants,' these allegations can be properly disregarded unless the reference to particular defendants can be clearly inferred." *Woolum v. City of Dallas, Texas*, No. 3:18-CV-2453-B-BN, 2019 WL 2604125, at *5 (N.D. Tex. May 24, 2019), *report and recommendation adopted*, No. 3:18-CV-2453-B-BN, 2019 WL 2601822 (N.D. Tex. June 25, 2019) (internal citations and brackets omitted); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Atuahene v. City of Hartford,* 10 Fed. App'x 33, 34 (2d Cir. 2001) (granting a motion to dismiss for failure to provide fair notice under Rule 8 in part because "[t]he complaint failed to differentiate among the defendants, alleging instead violations by 'the defendants' "). Plaintiff's blanket allegations are insufficient to state a claim against CCR One and should be disregarded.

              b.       Plaintiff's Allegations Regarding CCR One Are Insufficient.

Plaintiff's allegations regarding CCR One fall far short of anything that could be considered "active" or having any "degree of control" over the alleged waste. The specific allegations against CCR One and Chadick are limited to:

1.    CCR One owns the Property. Doc. 1, ¶ 8

2.    CCR One leased the Property to Blue Star "for the purpose of using the property for the disposal of shingles[.]" *Id.*

3.    CCR One and Chadick consented to Blue Star's activities. *Id.*, at ¶¶ 9, 17-19; and

4. CCR One and Chadick failed to remove "the waste despite being ordered to do so by state court order." *Id.* at ¶ 25.

Likely recognizing the shortcoming in her allegations, Plaintiff spends the rest of the Complaint trying to tie Blue Star's activities to CCR One and Chadick by repeatedly referring to Blue Star as CCR One and Chadick's tenant[2] whenever alleging Blue Star's "active functions with a direct connection to the waste itself." *Hinds*, 654 F.3d at 851. However, this transparent attempt to blame CCR One (and Chadick) for Blue Star's conduct does nothing but highlight that CCR One did not have any "degree of control" over the alleged waste and is therefore insufficient to state a claim.

Contrary to Plaintiff's allegation, neither CCR One nor Chadick were ordered by the state court to remove the shingles from the Property; in fact, it was the exact opposite. The Honorable Judge Slaughter decided CCR One should *not* be enjoined for the same reason Plaintiff fails to state a claim in this case – as the mere owner of the Property, CCR One did not have control over the Property and was not responsible for the accumulation of shingles. Ex. E, App. 48-50; Ex. F, App. 51-53; and Ex. G App. 57-60 ("I did not order injunction against the landowners, in light of the fact that they had – didn't have the legal right to enter the property or remediate the property at the time" … "the property owners [ ] had no part in creating this.")

With respect to the remaining allegations against CCR One, they amount to nothing more than passive conduct by a landlord.[3] Plaintiff's allegation that CCR One "leased the property for

---

[2] Because Chadick never owned the Property, Blue Star was never his tenant. An LLC's members do not hold ownership interest in property owned by the LLC. *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 846 (Tex. App.—Corpus Christi 2017, no pet.) (citing Tex. Bus. Orgs. Code § 101.106(b)).

[3] Shingle recycling is a legitimate business, evidenced by the fact that TCEQ maintains a list of shingle recyclers in Texas identifying more than three dozen companies. To the extent Blue Star "operated an illegal landfill" instead of a shingle recycling business, it was in breach of its lease and CCR One is an aggrieved party. CCR One had nothing to do with Blue Star's operations.

the purpose of using the property as … an illegal landfill," Doc. 1, p. 3, is demonstrably false. The Lease states "Tenant may use the leased premises for the following purposes *and no other*: 'Asphalt Shingle Recycling'" and prohibits Blue Star from using the Property for, *inter alia*: "any activity that violates any applicable law, regulation, zoning ordinance … any activity that violates … laws relating to air quality, water quality … waste disposal … or … other environmental matters" and "the permanent or temporary storage of any hazardous material." Ex. D, ¶ 9, App. 32 (emphasis added). The Lease further requires Blue Star to confirm the Property can be used as intended (i.e. for asphalt shingle recycling). *Id.* at ¶ 10. And while Plaintiff's allegation that CCR One consented to Blue Star's conduct is also untrue, even if it were true, because CCR One had no authority to tell Blue Star how to run its business, the allegation of "consent" to Blue Star's conduct does not amount to an active role, control, or contribution.

Nearly every court that has addressed the question has concluded mere ownership of property on which solid waste is deposited or present is insufficient to subject a defendant to liability under Section 6972(a)(1)(B). *E.g., City of Imperial Beach v. Int'l Boundary & Water Comm'n, United States Section*, 356 F. Supp. 3d 1006, 1023 (S.D. Cal. 2018) ("[M]ere ownership of contaminated land … [is] insufficient for contribution under RCRA."); *Sycamore*, 546 F.3d 847 (7th Cir. 2008) (concluding mere ownership of contaminated property is insufficient to warrant § 6972(a)(1)(B) liability; RCRA requires active involvement in handling or storing of waste); *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, 263 F. Supp. 2d 796, 844 (D.N.J. 2003), aff'd, 399 F.3d 248 (3d Cir. 2005) ("The Court finds that a straightforward reading of RCRA compels a finding that only *active* human involvement with the waste is subject to liability under RCRA[.]"); *see Hinds*, 654 F.3d at 851; *see also Cox v. City of Dallas*, 256 F.3d 281, 295 (5th Cir. 2001) (interpreting "contribute" to mean "have a part of share in producing an effect"); *Ctr. for*

*Biological Diversity v. United States Forest Serv.*, 925 F.3d 1041, 1053 (9th Cir. 2019) (failing to find RCRA liability where defendant owned and managed land "on which disposal of solid waste by third parties is ongoing, known, and unabated" and remanding to the district court to allow Plaintiff to amend and the parties to present the issues further). As these courts acknowledge, the conclusion is plainly supported by the statutory language that a defendant is only liable if it contributed or is contributing to the "handling, storage, treatment, transportation, or disposal" of solid waste. 42 U.S.C. § 6972(a)(1)(B).

Language in the statute that identifies potential defendants as "any … past or present owner … of a treatment, storage, or disposal facility *who has contributed*…" further supports the conclusion that mere owners are not liable. *Id.* (emphasis added). If being an owner alone were sufficient, there would be no need to add the "who has contributed" modifier. If that were Congress's intent, RCRA would simply make owners of facilities which may present imminent and substantial endangerment to health or the environment strictly liable. Congress certainly knows how to draft such a statute; it made "the owner and operator of a vessel or facility" strictly liable under the Comprehensive Environmental Response, Compensation, and Liability Act. 42 U.S.C. § 9607(a)(1). The fact that Congress took a different approach here evidences the fact that it did not intend to subject mere owners to liability.

Indeed, if owning property on which *others*, even tenants, handle, store, treat, transport, or dispose of solid waste subjected a defendant to RCRA liability, "a landlord of multi-unit apartment complex could be liable for an individual tenant's secret dumping of toxic waste simply by virtue of cashing the rent check." *Greenup*, 2019 WL 8643875, at *3 (rejecting the premise based on the reasoning in *Hinds*). Plaintiff cannot rely on the conduct of Blue Star, or any other individuals or entities, to establish that CCR One or Chadick contributed to the handling, storage, treatment,

transportation, or disposal of the alleged solid waste. Accordingly, Plaintiff fails to allege facts sufficient to support a claim under 42 U.S.C. § 6972 and her claims should be dismissed.

## V.       CONCLUSION

WHEREFORE, Defendant CCR Equity Holdings One, LLC prays the Court grant this Motion to Dismiss, dismiss all claims asserted by Plaintiff because: (1) Plaintiff failed to provide the requisite notice, (2) her claims are precluded by the State's lawsuit, and (3) she fails to state a claim upon which relief can be granted, and grant it whatever other relief it may show itself to be justly entitled.

Respectfully submitted,

*/s/ Gregory M. Sudbury*
GREGORY M. SUDBURY
Texas Bar No. 24033367
ERIC G. CARLSON
Texas Bar No. 24100076
**QUILLING, SELANDER, LOWNDS,**
  **WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Phone)
(214) 871-2111 (Fax)
gsudbury@qslwm.com
ecarlson@qslwm.com

**ATTORNEYS FOR DEFENDANT CCR**
**EQUITY HOLDINGS ONE, LLC**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on June 19, 2020 a true and correct copy of the foregoing pleading has been furnished to all counsel of record, via ECF, in accordance with the Federal Rules of Civil Procedure.

*/s/ Gregory M. Sudbury*
Gregory M. Sudbury