## ELECTRONICALLY RECORDED  201800096174
## 04/12/2018 02:50:08 PM DEED  1/5

**Capital Title**
**GF# 18-348845**

### SPECIAL WARRANTY DEED WITH VENDOR'S LIEN
### (With Assignment of Lien to Third Party)

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**Effective Date:**    April 12 , 2017

**Grantor:**    Comet Auto Salvage, Inc., a Texas corporation

**Grantee:**    CCR Equity Holdings One, LLC, a Texas limited liability company

**Grantee's Address:**    906 W. McDermott Drive
Suite 116-321
Allen, Texas 75013

**Consideration:**    A promissory note of even date herewith in the principal amount as stated therein (the "Note") executed by Grantee and payable to the order of First United Bank and Trust Company, a state banking organization ("Lender"), and other valuable consideration. The Note is secured by the vendor's lien retained herein and by a deed of trust of even date herewith executed by Grantee to Greg Massey, Trustee, for the benefit of Lender.

**Property:**    Being all that certain lot, tract, or parcel of land situated in the L. Dixon Survey, Abstract No. 380, in the City of Dallas, Dallas County, Texas, and being more particularly described on Exhibit "A" attached hereto and made a part hereof for all purposes; together with all buildings, fixtures and other real property improvements located on said real property; and the benefits and appurtenances on or appertaining to said real property and improvements.

**Permitted Exceptions:**    Standby fees, ad valorem taxes and assessments for the year in which this Deed is executed and subsequent years, and subsequent assessments for prior years due to changes in land usage or ownership, payment of which are assumed by Grantee, and the liens securing same; valid and existing visible and apparent easements, rights of way and prescriptive rights, if any, that are not of record but are shown on a survey of the Property furnished to Grantee at or before execution and delivery of this Deed; and any and all restrictions, covenants, easements, rights of way and other matters of record affecting the Property; provided the Permitted Exceptions

Sp. W. Deed Assign 3rd  Comet Auto Salvage to CCR

-1-





**APP. 1**

do not include liens or conveyances affecting the Property, unless same are expressly identified in this Deed.

For the above stated consideration, the receipt and sufficiency of which is acknowledged, Grantor has GRANTED, SOLD AND CONVEYED and by these presents does GRANT, SELL AND CONVEY unto Grantee the Property, to have and to hold the Property unto Grantee and Grantee's heirs, executors, administrators, successors and assigns forever, subject to the Permitted Exceptions. Grantor binds Grantor and Grantor's heirs, executors, administrators, successors and assigns to warrant and forever defend title to the Property to Grantee and Grantee's heirs, executors, administrators, successors and assigns, subject to the Permitted Exceptions, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Grantor, but not otherwise.

Lender, at Grantee's request, has paid in cash to Grantor that portion of the purchase price for the Property that is evidenced by the Note. A Vendor's Lien against and superior title to the Property are retained to secure the Note for the benefit of Lender and are hereby transferred by Grantor to Lender without recourse or warranty by Grantor. The Vendor's Lien against and superior title to the Property are retained until the Note is fully paid according to its terms, at which time this Deed shall become absolute.

When the context requires, singular nouns and pronouns include the plural.

Executed on the date of the acknowledgment below, but effective as of the Effective Date set forth above.

Comet Auto Salvage, Inc., a
Texas corporation

By: _Faustus Ry_
Faustino Reyes, President



Sp. W. Deed Assign 3rd Comet Auto Salvage to CCR

-2-

APP. 2

STATE OF TEXAS          §
                                §
COUNTY OF DALLAS     §

        This instrument was acknowledged before me on April __9__, 2018, by Faustino Reyes, President of Comet Auto Salvage, Inc., a Texas corporation, on behalf of said corporation.

R. A. BLANSHARD
Notary Public
State of Texas
ID # 135379-7
My Comm. Expires 08-16-2020

My Commission Expires:

_____

_____
Notary Public, State of Texas

_____
Notary's Printed/Typed Name

**AFTER RECORDING, RETURN TO:**

CCR Equity Holdings One, LLC
906 W. McDermott Drive
Suite 116-321
Allen, Texas 75013
Attn: Cabe Chadick

Sp. W. Deed Assign 3rd Comet Auto Salvage to CCR

-3-



Escrow File No.: **18-348845-DB**

### EXHIBIT "A"

BEING all that certain lot, tract, or parcel of land situated in the L. Dixon Survey, Abstract Number 380, in the City of Dallas, Dallas County, Texas, and being the remainder of that same tract of land described by deed to Comet Auto Salvage, Inc. as recorded under Volume 2002180, Page 2530, Official Public Records of Dallas County, Texas, (O.P.R.D.C.T.), and being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod with cap stamped, "Shields & Lee" found for the east corner of the herein described tract, same being the east corner of said Comet Auto Salvage tract (2002180/2530), and being the north corner of a tract of land described by deed to Brown Family Lewisville Railroad Family First, LP as recorded under Instrument Number 201400045413, (O.P.R.D.C.T.), said point also being in the present southwest line of S. Central Expressway;

THENCE South 60 degrees 05 minutes 19 seconds West, with the southeast line of said Comet Auto Salvage tract (2002180/2530), and with the northwesterly line of said Brown Family tract, a distance of 581.33 feet to a 1/2 inch iron rod with yellow cap stamped, "Arthur Surveying Company" (ASC) set for corner, same being the west corner thereof, and being the south corner of said Comet Auto Salvage tract (2002180/2530), said point also being in the northeasterly line of a tract of land described by deed to Texas Power and Light Company as recorded under Volume 70241, Page 624, (O.P.R.D.C.T.), from which a found "60D" nail bears South 24 degrees 00 minutes 35 seconds East a distance of 3.30 feet;

THENCE North 35 degrees 37 minutes 21 seconds West, with a southwesterly line of said Comet Auto Salvage tract (2002180/2530), and with the northeasterly line of said Texas Power and Light Company tract, a distance of 254.18 feet to a 1/2 inch iron rod with ASC cap set for corner, same being a northwest corner of said Comet Auto Salvage tract (2002180/2530), and being the southwest corner of G.N. Phillipy Subdivision, an addition to the City of Dallas, Dallas County, Texas, according to the plat recorded under Volume 2, Page 1228, Plat Records of Dallas County, Texas, (P.R.D.C.T.), from which a found "60D" nail bears South 75 degrees 15 minutes 57 seconds East a distance of 10.49 feet;

THENCE North 40 degrees 08 minutes 40 seconds East, a northwesterly line of said Comet Auto Salvage tract (2002180/2530), and with the southeasterly line of said G.M. Phillipy Subdivision, a distance of 263.18 feet to a 1/2 inch iron rod with ASC cap set for corner, same being the southeast corner thereof, and being the southwest corner of a tract of land described by deed to Almira Industrial and Trading Corporation as recorded under Instrument Number 20140028765, (O.P.R.D.C.T.);

THENCE North 76 degrees 27 minutes 38 seconds East, with a southerly line of said Almira tract, a distance of 65.62 feet to a 1/2 inch iron rod with ASC cap set for corner, same being a southerly corner thereof;

THENCE North 55 degrees 36 minutes 43 seconds East, with a southeasterly line of said

Almira tract, a distance of 290.64 feet to a 1/2 inch iron rod found for corner, same being the east corner thereof, said point also being in the southwesterly line of said S. Central Expressway;

THENCE South 30 degrees 59 minutes 20 seconds East, with the easterly line of said Comet Auto Salvage tract (2002180/2530), and with the southwesterly line of said S. Central Expressway, a distance of 346.94 feet to THE POINT OF BEGINNING and containing 4.358 acres of land, more or less.

Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
04/12/2018 02:50:08 PM
$42.00
201800096174





APP. 5



THE STATE OF TEXAS
COUNTY OF DALLAS
I hereby certify that the above and foregoing is a full, true, and
correct photographic copy of the original record now in my lawful
custody and possession, filed on the date stamped thereon and as
the same is recorded in the Recorder's Records in my office under
the volume and page or instrument # stamped thereon.
I hereby certify on

DEC 1 6 2019

COUNTY CLERK, Dallas County, Texas

By _____ Deputy

FILED
3/11/2020 11:11 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Martin Reyes DEPUTY

Case 3:20-cv-00967-M   Document 11-1   Filed 06/19/20   Page 7 of 60   PageID 65

Martin Reyes

## Cause No. DC-18-18651

| | | |
|---|---|---|
| **CITY OF DALLAS,** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* and | § | |
| | § | |
| **STATE OF TEXAS,** | § | |
| | § | |
| *Intervenor-Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BLUE STAR RECYCLING LLC;** | § | **DALLAS COUNTY, TEXAS** |
| **ALMIRA INDUSTRIAL AND TRADING** | § | |
| **CORP.; CCR EQUITY HOLDINGS** | § | |
| **ONE, LLC; 9505 S. CENTRAL** | § | |
| **EXPRESSWAY,** *IN REM;* **9527 S.** | § | |
| **CENTRAL EXPRESSWAY,** *IN REM;* | § | |
| **AND CHRIS GANTER,** | § | |
| | § | |
| *Defendants.* | § | **191st JUDICIAL DISTRICT** |

## <u>THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIONS</u>

Intervenor-Plaintiff the State of Texas, by and through its Attorney General, on behalf of the Texas Commission on Environmental Quality ("TCEQ"), and, pursuant to Texas Water Code Section 7.105 and Texas Rule of Civil Procedure 60, files its petition to intervene as plaintiff seeking injunctive relief, civil penalties, and attorney's fees against Defendants Blue Star Recycling, LLC ("Blue Star"), Almira Industrial and Trading Corporation ("Almira"), CCR Equity Holdings One, LLC ("CCR"), 9505 S. Central Expressway, *in rem*, 9527 S. Central Expressway, *in rem*, and Chris Ganter (collectively, "Defendants") for violations of state solid waste laws and regulations.



*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                    PAGE 1 OF 15

APP. 7

## I.      ORIGINAL LAWSUIT

**1.**      On December 14, 2018, the City of Dallas brought this lawsuit to enforce violations of the Dallas City Code relating to solid waste accumulation and discharges at the property legally described as Block 8010, Tracts 3 and 3.1, and more commonly known as 9505 and 9527 S. Central Expressway, Dallas, Texas. The City of Dallas seeks to enforce numerous local regulations including, but not limited to those regulating: unauthorized stormwater discharges, unauthorized air emissions, and unauthorized accumulation of litter.  The City of Dallas seeks civil penalties and injunctive relief requiring the Defendants to bring the conditions of the Site into compliance with the Dallas City Code and applicable state law.

## II.      RELIEF SOUGHT

**2.**      Intervenor-Plaintiff seeks civil penalties for Defendants' violations of state environmental laws and TCEQ rules related to unauthorized acceptance, storage and disposal of solid waste.  Further, the State seeks a temporary injunction and permanent injunction requiring Defendants to remove asphalt shingles, ground material from shingles, and other solid waste from the property and remediate any and all contamination that they caused, suffered, allowed, or permitted.

## III.      PARTIES

**3.**      Plaintiff, the City of Dallas, is a home-rule municipal corporation situated mainly in Dallas County, Texas, incorporated and operating under the laws of the State of Texas.  A copy of this petition will be forwarded to Jayla Wilkerson, attorney-in-charge for the Plaintiff, at 7DN Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75201.

**4.**      Intervenor, party-plaintiff, the State of Texas ("State"), is authorized to bring this suit through its Attorney General at the request of TCEQ pursuant to Tex. Water Code § 7.105.

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                    PAGE 2 OF 15

APP. 8

No filing fee or other security for costs is required of the State under Tex. Civ. Prac. & Rem. Code § 6.001.

5.     Defendant Blue Star Recycling, LLC is a Texas limited liability company which controlled and operated property located in Dallas County that is the subject of this suit.  Defendant Blue Star Recycling, LLC has appeared and answered in this case.  On May 8, 2019, the Court issued an order granting the withdrawal of Blue Star Recycling, LLC's counsel of record. Defendant Blue Star Recycling, LLC may be served with process through Blue Star Recycling, LLC's registered agent, Carl Wayne Orrell, at 501 Indian Creek Drive, Trophy Club, Texas 76262.

6.     Defendant Almira Industrial and Trading Corporation is a Texas corporation that owns property, which is located in Dallas County, and that is the subject of this lawsuit.  Defendant Almira Industrial and Trading Corporation has appeared and answered in this case.  Defendant Almira Industrial and Trading Corporation may be served with process through its attorney-in-charge, Mary M. Melle, of the law firm Calhoun, Bhella & Sechrest, LLP, at 325 N. Saint Paul, Suite 2300, Dallas, Texas 75201.

7.     Defendant CCR Equity Holdings One, LLC is a Texas limited liability company that owns property, which is located in Dallas County, and that is the subject of this lawsuit. Defendant CCR Equity Holdings One has appeared and answered in this case.  Defendant CCR Equity Holdings One, LLC may be served with process through its attorney-in-charge, Gregory M. Sudbury, of the law firm Quilling, Selander, Lownds, Winslett & Moser, PC, at 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

8.     Defendant Chris Ganter is an individual who was the Blue Star representative with control over the property that is the subject of this lawsuit, during the times relevant to this suit. Mr. Ganter has appeared *pro se* and answered in this case.  Mr. Ganter may be served with process

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                    PAGE 3 OF 15

APP. 9

at 10015 Rearwin Lane, McKinney, Texas 75071, 4000 Carmel Road, Celina, Texas 75009, or wherever he may be found.

## IV.   JURISDICTION AND VENUE

**9.**     This Court has jurisdiction pursuant to Tex. Water Code § 7.105(a).

**10.**     Venue for this suit is proper in Dallas County pursuant to Tex. Water Code § 7.105(c).

## V.   FACTS

**11.**     Defendants Blue Star, AIT, and CCR Equity own and/or operate properties legally described as Block 8010, Tracts 3 and 3.1, and more commonly known as 9505 and 9527 S. Central Expressway, Dallas, Texas ("Site") where violations of Texas environmental laws have occurred and are occurring. Blue Star, AIT, and CCR Equity have been the owners and/or operators of the Site at all times relevant to this suit.

**12.**     Blue Star operated a business at the Site advertising shingles recycling.  Chris Ganter was CEO and co-founder of Blue Star and controlled its operations at the Site.  Mr. Ganter held himself out as the owner's representative in control of the Site.  Mr. Ganter made decisions about business operations and the placement of shingles and other materials at the Site.

**13.**     Defendants do not have a permit, registration, or other authorization from the TCEQ to conduct any activity of storage, processing, or disposal of any solid waste at the Site.

**14.**     On December 14, 2018, the City of Dallas initiated this lawsuit, alleging *inter alia* that roofing shingles, roofing shingle particles (e.g., large piles of ground-up shingle asphalt) wood pallets and other types of waste had been accumulated and disposed of at the Site and into an adjacent creek.  On March 21, 2019, the Court entered a temporary restraining order against the Defendants immediately enjoining them from any further unlawful waste collection, recycling, or

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                    PAGE 4 OF 15

**APP. 10**

any other industrial activity.  Later, on April 10, 2019, the Court entered a temporary injunction against Blue Star requiring it to: (i) cease accepting asphalt shingles, wood pallets, or other waste material at the Site, (ii) cease grinding and processing of any materials at the Site, and (iii) remove all shingles, ground material from shingles, wood pallets, debris, waste, refuse, and other related materials from the Site.

15.      Blue Star failed to comply with the temporary injunction and was found in contempt on November 22, 2019.

16.      To date, the Defendants have failed to remove the shingles, ground material from shingles, wood pallets, and other waste from the Site.

## VI.      LEGAL AUTHORITY

17.      This is a suit seeking compliance with the Texas Solid Waste Disposal Act ("TSWDA"), codified in Chapter 361 of the Texas Health and Safety Code, and TCEQ rules adopted pursuant to the TSWDA.  The State seeks injunctive relief, civil penalties, administrative penalties, attorney's fees, and court costs.

18.      It is the policy of the State to "safeguard the health, welfare, and physical property of the people and to protect the environment by controlling the management of solid waste."  Tex. Health & Safety Code § 361.002.  The Texas Commission on Environmental Quality is the state agency charged with implementing and enforcing state environmental laws.

19.      The TSWDA confers jurisdiction on TCEQ to adopt rules regulating the storage, processing, and disposal of solid waste.  Tex. Health & Safety Code §§ 361.011, 361.017 and 361.119.

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
**THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF**                    **PAGE 5 OF 15**

APP. 11

20.     Pursuant to its authority under the TSWDA, TCEQ adopted Title 30, Chapters 330 and 335 of the Texas Administrative Code to prohibit unauthorized storage, processing, and disposal of municipal solid waste and industrial solid waste.

21.     Solid waste is garbage, rubbish, refuse, sludge and other discarded material from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities.  30 Tex. Admin. Code § 330.3(145).

22.     Solid waste includes recyclable material that has been abandoned or disposed of rather than recycled. 30 Tex. Admin. Code. § 330.3(122).

23.     Industrial Solid Waste is solid waste resulting from or incidental to any process of industry or manufacturing, or mining or agricultural operations, which may include hazardous waste.  30 Tex. Admin. Code §§ 330.3(66), 335.1(83).

24.     Under 30 Tex. Admin. Code § 335.2(a), "no person may cause, suffer, allow, or permit any activity of storage, processing, or disposal of any industrial solid waste or municipal hazardous waste unless such activity is authorized by a permit, amended permit, or other authorization from the Texas Commission on Environmental Quality (commission) or its predecessor agencies, the Department of State Health Services (DSHS), or other valid authorization from a Texas state agency."

25.     Under 30 Tex. Admin. Code § 335.4, "no person may cause, suffer, allow, or permit the collection, handling, storage, processing, or disposal of industrial solid waste or municipal hazardous waste in such a manner so as to cause: (1) the discharge or imminent threat of discharge of industrial solid waste or municipal hazardous waste into or adjacent to the waters in the state without obtaining specific authorization for such a discharge from the Texas Commission on

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                    PAGE 6 OF 15

APP. 12

Environmental Quality; (2) the creation and maintenance of a nuisance; or (3) the endangerment of the public health and welfare."

26.     Municipal solid waste ("MSW") is "solid waste resulting from or incidental to municipal, community, commercial, institutional, and recreational activities, including garbage, rubbish, ashes, street cleanings, dead animals, abandoned automobiles, and all other solid waste other than industrial solid waste."  30 Tex. Admin. Code § 330.3(88).

27.     Under 30 Tex. Admin. Code §§ 330.7(a) and 330.9(a), no person may cause, suffer, allow, or permit any activity of storage, processing, removal, or disposal of any solid waste and/or MSW unless such activity is authorized by permit, registration, or other authorization from TCEQ. In the event of such unauthorized activity, TCEQ may seek recourse against not only the person that stored, processed, or disposed of the waste but also against the owner or operator, or any other person, who caused suffered, allowed, or permitted the waste to be stored, processed, or disposed. *Id*.

28.     Under 30 Tex. Admin. Code § 330.15(a), a person may not cause, suffer, allow, or permit the collection, storage, or disposal of MSW in a manner that causes: (1) the discharge or imminent discharge of MSW into or adjacent to waters in the state without obtaining specific authorization from the TCEQ for the discharge; (2) the creation of a nuisance; or (3) the endangerment human health and the environment.  Additionally, under 30 Tex. Admin. Code § 330.15(c), a person generally may not cause, suffer, allow, or permit the dumping or disposal of MSW without the written authorization of the TCEQ.

29.     The Attorney General may institute a suit in the name of the State of Texas to enforce state statutes and TCEQ rules or orders through injunctive relief and civil penalties as set forth in Tex. Water Code §§ 7.032 and 7.105.

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                         PAGE 7 OF 15

APP. 13

30.     It is a violation of the Texas Water Code for a person to cause, suffer, allow, or permit a violation of a TCEQ rule or order.  Tex. Water Code § 7.101.

31.     A person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit under TCEQ jurisdiction shall be assessed a civil penalty of not less than $50 nor greater than $25,000 for each day of each violation.  Tex. Water Code § 7.102.  Each day of a continuing violation is a separate violation.  *Id*.

## VII.    CLAIM 1 – CIVIL PENALTIES

### Defendants unauthorized disposal of solid waste, ISW and MSW

32.     As provided in Section V of this petition, the Defendants do not have a permit, registration, or other authorization from TCEQ to conduct any activity of storage, processing, or disposal of any solid waste, ISW or MSW at the Site.  Since at least April 10, 2019, the Defendants have accumulated, stored, processed, and disposed large quantities of ISW and MSW at the Site, including roofing shingles, ground-up asphalt shingle materials, wood pallets, and other discarded and abandoned materials on Site.  Further, the Defendants' storage, processing, and disposal of ISW and MSW at the Site endangers human health and the environment.  Therefore, since at least April 10, 2019, the Defendants have stored, processed, and disposed of ISW and MSW in violation of 30 Tex. Admin Code §§ 330.7(a), 330.9(a), 330.15(a), 330.15(c), 335.2(a), and 335.4.

33.     It is a violation of the Texas Water Code for a person to cause, suffer, allow, or permit a violation of a TCEQ rule or order.  Tex. Water Code § 7.101.

34.     Therefore, pursuant to Tex. Water Code § 7.102, the State requests that Defendants be assessed a civil penalty of not less than $50 nor greater than $25,000 for each day that they violated Tex. Water Code §§ 7.101 and 30 Tex. Admin. Code §§ 330.7(a), 330.9(a), 330.15(a), 330.15(c), 335.2(a) and 335.4.

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                          PAGE 8 OF 15

APP. 14

## VIII.   CLAIM 2 - INJUNCTIVE RELIEF

**35.**      The Attorney General may commence an action on behalf of the State to enjoin a violation or threatened violation of any "statute within the commission's jurisdiction or a rule adopted or an order or a permit issued under such a statute."  Tex. Water Code § 7.032(b).  As alleged above, Defendants are in current violation of TCEQ rules regulating unauthorized disposal and the management of ISW and MSW.  Accordingly, the State seeks an appropriate injunctive order to prevent violations or threatened continuing violations and to obtain appropriate corrective actions.

**36.**      No bond is required of the State prior to granting of an injunction as set forth in Tex. Water Code § 7.032(d).

**37.**      The State requests a temporary injunction ordering Defendants, their agents, servants, employees, and all other persons acting in concert or participation with her, on her behalf, or under her control, whether directly or indirectly, to carry out the following:

**Words and Terms:**

> 1. As used in this Injunction, the following words and terms have the following meanings:
>
> > a) **"Defendants"** means Defendants Blue Star Recycling, LLC, Almira Industrial and Trading Corporation, CCR Equity Holdings One, LLC, and Chris Ganter, their agents, servants, employees, and all other persons acting in concert or participation with them, on their behalf, or under their control, whether directly or indirectly.
> >
> > b) **"Site"** means the property legally described as Block 8010, Tracts 3 and 3.1, and more commonly known as 9505 and 9527 S. Central Expressway, Dallas, Texas.
> >
> > c) **"TCEQ"** means the Texas Commission on Environmental Quality.
> >
> > d) **"Effective Date"** means the date the Court signs this Injunction.

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
**THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND**
**REQUEST FOR TEMPORARY AND PERMANENT RELIEF**                    **PAGE 9 OF 15**

**APP. 15**

e) "**ISW**" means solid waste resulting from or incidental to any process of industry or manufacturing, or mining or agricultural operations, which may include hazardous waste.

f) "**MSW**" means solid waste resulting from or incidental to municipal, community, commercial, institutional, or recreational activities, and includes garbage, rubbish, ashes, street cleanings, dead animals, abandoned automobiles, and other solid waste other than industrial solid waste.

g) "**Solid Waste**" means garbage, rubbish, refuse, sludge and other discarded material from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities.

**Ordering Provisions:**

2. Immediately upon the Effective Date, Defendants shall cease disposing of, storing, or accepting any ISW and MSW at the Site, including roofing shingles, ground-up asphalt shingle materials, wood pallets, and other discarded and abandoned materials. Defendants shall not accept any other Solid Waste at the Site for processing, storage, or disposal.

3. No later than 90 days after the Effective Date, Defendants shall completely remove all ISW and MSW from the Site including roofing shingles, ground-up asphalt shingle materials, wood pallets, and other discarded and abandoned materials, and properly dispose of the ISW and MSW at a facility authorized by TCEQ to accept such waste. Defendants shall maintain all receipts, tickets, or other documents showing disposal of the ISW and MSW at such authorized facility.

4. Within 100 days after the Effective Date, Defendants shall provide TCEQ with written certification, including photographs, documentation of dates and quantity of waste removed from the Site, and copies of receipts, tickets, or other documents concerning disposal of the ISW and MSW from the approved facility that received the waste.

5. Defendants shall send documentation, including certifications and supporting documents, to:

> Texas Commission on Environmental Quality
> Order Compliance Team
> Enforcement Division, MC 149A
> P.O. Box 13087
> Austin, Texas 78711-3087

with copies to:

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                    PAGE 10 OF 15

APP. 16

Phillip Ledbetter, Assistant Attorney General
Re: AG # CX3595988184
Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548

**38.**     Upon final trial, the State requests that this Court make the temporary injunction

against Defendants permanent and issue such additional injunctive relief as may be warranted by

the facts.

## IX.     ATTORNEY'S FEES AND COSTS

**39.**     This is an action brought by the State to recover civil penalties and for injunctive

relief.  Therefore, as set forth in Tex. Gov't Code § 402.006(c) and Tex. Water Code § 7.108, the

Attorney General is entitled to recover and collect reasonable attorney's fees, investigative costs,

and court costs incurred in relation to this proceeding on behalf of the State.  In the event of an

appeal to the Court of Appeals or to the Supreme Court, the Attorney General is entitled to recover

and collect its additional reasonable attorney's fees and court costs on behalf of the State.

## X.     POST-JUDGMENT INTEREST

**40.**     Pursuant to Tex. Fin. Code § 304.003, the State asks this Court to award the State

post-judgment interest on all amounts awarded in relation to this proceeding, at the maximum rate

allowed by law.

## PRAYER FOR RELIEF

The State of Texas requests the following, that:

**1.**     That this Court issue a temporary injunction against Defendants requested herein
by Intervenor-Plaintiff and by the City of Dallas;

**2.**     That upon final trial in this cause, the Court grant a permanent injunction against
Defendants as requested herein by Intervenor-Plaintiff and by the City of Dallas;

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                    PAGE 11 OF 15

APP. 17

3.      The Court grant judgment against Blue Star Recycling LLC, Almira Industrial and Trading Corporation, CCR Equity Holdings One, LLC, and Chris Ganter for appropriate civil penalties within the range allowed by law;

4.      The Court award the State its reasonable attorney's fees, court costs, and reasonable investigative costs in this action;

5.      The Court award the State post-judgment interest on all amounts awarded in this suit until fully paid; and

6.      The Court award the State all such other relief, general and special, at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

/s/ Phillip Ledbetter
PHILLIP LEDBETTER
Assistant Attorney General
State Bar No. 24041316
Phillip.Ledbetter@oag.texas.gov

JAKE K. BROWN
Assistant Attorney General
State Bar No. 24084234
Jake.Brown@oag.texas.gov

Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911

ATTORNEYS FOR THE STATE OF TEXAS

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                    PAGE 12 OF 15

APP. 18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the following in the manner described below on March 11, 2020:

Carl Wayne Orrell                                           *via CMRRR 7018 0680 0001 4136 6254*
501 Indian Creek Drive
Trophy Club, Texas 76262

**Registered agent for Defendant Blue Star Recycling, LLC**

Mary M. Melle                                                   *via e-file and email*
CALHOUN, BHELLA & SECREST LLP
325 N. Saint Paul, Suite 2300
Dallas, Texas 75201
mmelle@cbsattorneys.com

**Attorney for Defendant Almira Industrial and Trading Corporation**

Gregory M. Sudbury                                         *via e-file and email*
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
gsudbury@qslwm.com

**Attorney for Defendant CCR Equity Holdings One, LLC**

Jayla Wilkerson                                                *via e-file and email*
Senior Assistant City Attorney
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
jayla.wilkerson@dallascityhall.com

**Attorney for Plaintiff, the City of Dallas, Texas**

Chris Ganter                                                     *via CMRRR 7018 0680 0001 4136 6247*
400 Carmel Road                                                        *and e-file*
Celina, Texas 75009
Ganter2121@gmail.com

**Pro Se Defendant**

                             */s/ Phillip Ledbetter*
                             PHILLIP LEDBETTER

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION AND
REQUEST FOR TEMPORARY AND PERMANENT RELIEF                                    PAGE 13 OF 15

**APP. 19**

# Texas Commission on Environmental Quality



20-52182-NEG

### NEGATIVE CERTIFICATION

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF TRAVIS** | § |

I, Kendra Mayfield, Alternate Custodian of Records of the Texas Commission on Environmental Quality (TCEQ), in the performance of the functions of my office, hereby certify that I am the lawful possessor and keeper and have legal custody of the records of the TCEQ, and that I am authorized to make this certification. I further certify that I am competent to testify to the facts in this affidavit and that the statements in this affidavit are based on personal knowledge and are true.

I also certify that it is the policy of the TCEQ to keep records of all permits, orders, licenses, certificates, registrations, approvals and applications for such authorizations, and that such records are actually kept.

I further certify that I have diligently searched, or caused to be searched, the records of the TCEQ for the properties located at 9505 and 9527 S. Central Expressway, Dallas, Texas (the "Site"). Based on my search, I certify that I found no records of any permits or authorizations under Chapters 330 or 335 of Title 30 of the Texas Administrative Code for the Site.

WITNESS MY HAND AND SEAL of the Texas Commission on Environmental Quality on this the 25th day of February 2020.

SEAL

_____
Kendra Mayfield, Alternate Custodian of Records
Texas Commission on Environmental Quality

SUBSCRIBED AND SWORN TO before me this the 25th day of February 2020 by Marie Boren, to certify which, witness my hand and the seal of office.

_____
Notary Public in and for the State of Texas

STACEY HARPER
Notary Public, State of Texas
Comm. Expires 06-19-2022
Notary ID 12816816-0

*City of Dallas, et al. v. Blue Star Recycling LLC, et al.*
THE STATE OF TEXAS'S ORIGINAL PETITION IN INTERVENTION
AND REQUEST FOR TEMPORARY AND PERMANENT RELIEF

Page 14 of 15

**APP. 20**

STATE OF TEXAS                          §
                                        §
COUNTY OF DALLAS                        §

BEFORE ME, the undersigned authority, on this day personally appeared *Clint Burnett*, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

"My name is *Clint Burnett* I am over the age of eighteen years, of sound mind, and capable of making this affidavit. I make this affidavit on the basis of my personal knowledge and facts I determined upon my investigations of this matter. The statements herein are true and correct.

I am employed by the Texas Commission on Environmental Quality ("TCEQ") as an investigator. In this capacity, I have the authority to make this Affidavit. Furthermore, in this capacity, I am familiar with the property located at 9505 and 9527 S. Central Expressway, Dallas, Texas (the "Site").

I have read the foregoing *State of Texas's Original Petition in Intervention and Request for Temporary and Permanent Injunctions* ("Petition"), and I am personally familiar with the facts and violations alleged in Section V therein. I gained personal knowledge of those facts through my personal observations during my investigations of the Site, including my review of records related to the Site maintained by the TCEQ, filings and orders in the City of Dallas's lawsuit related to the Site against the Defendants in the 191st Judicial District Court of Dallas County (Cause No. DC-18-18651), and the records and other information provided to the TCEQ by the owners and operators of the Site. Based on such personal knowledge, the facts alleged in Section V of the Petition are true and correct."

                        _____
                                02/28/20
                        Environmental Investigator
                        Texas Commission on Environmental Quality

SWORN TO and SUBSCRIBED before me on the 28th day of FEBRUARY, 2020, to certify which witness by my hand and official seal.

        (seal)

                        _____
                        Sonya T. Rieback
                        Notary Public in and for the State of Texas

Sonya T. Rieback
Notary Public, State of Texas
ID# 13187103-6
Comm. Exp: 01-18-2023
Notary without Bond

**DANIEL & BESHARA, P.C.**
ATTORNEYS AT LAW
3301 Elm Street
Dallas, Texas 75226
(214) 939-9230
FAX (214) 741-3596
danbesh@danielbesharalawfirm.com


November 26, 2019


CCR Equity Holdings One, LLC
Governing Member and Registered Agent
Cabe Chadick
1403 Windsor Drive
McKinney, Tx 75070

Cabe Chadick
2018 906 W McDermott Dr. STE 116-321
Allen, TX 75013

REGISTERED MAIL


Re: NOTICE OF INTENT TO FILE CITIZEN'S SUIT, 42 U.S.C. § 6972

To: CCR Equity Holdings One, LLC, its registered agent, and its managing member

   Ms. Marsha Jackson is giving notice of intent to file a Citizens' Suit against Blue Star Recycling, LLC and its managing members pursuant to 42 U.S.C. § 6972(a)(1)(B), Resource Conservation and Recovery Act [RCRA]. She intends to file a Citizens' Suit at the expiration of the notice period set forth in 42 U.S.C. § 6972.

   Ms. Jackson is a homeowner who resides at 4920 Choate Road, Dallas TX. 75241. She resides directly adjacent to the illegal solid waste landfill known as "Shingle mountain" located on two lots. One lot is at 9505 S. Central Expressway and the other lot is at 9527 S. Central Expressway. Both lots adjoin her property. She is harmed daily by living next to the open dump/landfill at this location. Her house is within 100 feet of piles of debris and solid waste on the landfill property. This notice is for the site at 9527 S. Central Expressway which is owned by CCR Equity Holdings One, LLC.

   The subject of this Citizens' Suit notice is an open dump known as "Shingle Mountain." This illegal solid waste landfill contains at least 198,000 cubic yards of unprocessed asphalt shingle material and roofing waste material at the landfill site. There are other piles of processed shingles and waste materials on the site. There is drainage from the unprocessed asphaltic shingle material in a pooled area of water on the site.

EXHIBIT
**C**

1

APP. 22

Blue Star Recycling LLC began accepting truckloads of roofing shingles and solid waste at the location on or about January 2018. In February 2018, Ms. Jackson complained to City of Dallas Code Enforcement about the piles of debris being placed on the property. Blue Star Recycling continued to bring in solid waste to the property.

Blue Star Recycling, LLC is the tenant of CCR Equity Holdings One, LLC at 9527 S. Central Expressway. CCR Equity Holdings One, LLC and its governing member contributed to the past or present handling, storage, treatment, transportation, or disposal of solid waste at the Shingle Mountain landfill which presents an imminent and substantial endangerment to health or the environment in violation of RCRA, 42 U.S.C. § 6972(a)(1)(B). CCR Equity Holdings One, LLC and its governing member contributed to the past or present handling, storage, treatment, transportation, or disposal of solid waste at the Shingle Mountain landfill which presents an imminent and substantial endangerment to health or the environment in violation of RCRA, 42 U.S.C. § 6972(a)(1)(B) by consenting to Blue Star Recycling, LLC use of the property and for allowing the use of the property for the past or present handling, storage, treatment, transportation, or disposal of solid waste at the Shingle Mountain landfill which presents an imminent and substantial endangerment to health or the environment in violation of RCRA, 42 U.S.C. § 6972(a)(1)(B).

The Shingle Mountain Property is located, in whole or in significant part, within the 100-year floodplain as defined by the Federal Emergency Management Agency (FEMA) and identified on that agency's Flood Insurance Rate Map.

Blue Star Recycling operated the shingle recycling business at the Property.

By December 13, 2018, Blue Star Recycling, LLC had accepted enough shingles to create a 15-20-ft tall, 300-foot long wall of ground-up shingle asphalt stretching approximately 30-40 feet across the entire length of the creek on or adjacent to the premises. The amount and placement of the waste resulted in near-complete blockage of the creek discharge of industrial and asphalt base material into the stormwater drainage system.

Roofing shingles, roofing shingle particles, wooden pallets, and chips of wood, industrial waste, and asphalt base were discharged into the stormwater drainage system.

Blue Star Recycling personnel caused the discharge of the industrial waste and other pollutants into the stormwater system.

Blue Star Recycling is an industrial facility, and a Texas Pollutant Discharge Elimination System Permit (TPDES) is required to conduct the lawful activities at the Property.

On or about March 11, 2019, the Texas Commission on Environmental Quality notified Blue Star Recycling that it had initiated an enforcement action against Blue Star Recycling.

As a result of the continued existence of Violations on the Property, on March 18, 2019, Certificate of Occupancy No. 1809141034 for an industrial (outside) use was revoked by the City of Dallas Building Official.

The City of Dallas states that the following Violations of the Dallas City Code exist on the Property:

a. Discharging industrial waste into the storm sewer, in Violation of §49-55.7;

b. Discharging one or more air contaminants in such concentration and 0f such duration as are or may tend to be injurious to or adversely affect human health or welfare, animal life, vegetation, or property; or as to interfere with the normal use or enjoyment of animals, vegetation, and property, in Violation of §5A-6(1);

c. Causing, suffering, allowing, or permitting Visible emissions from a source not permitted by 30 TAC §1 1 1.1 1 1(a), in Violation of §5A-6(4);

d. Placing, depositing, or throwing; permitting to accumulate; or permitting to be placed, deposited, or thrown, any litter on the premises or on the parkway adjacent to the premises, in Violation of §7A-18;

e. Permitting any yard, grounds or premises belonging to or controlled or occupied by Defendants [the owners and operator] to become, from any cause, nauseous, foul, offensive or injurious to the public health, or unpleasant and disagreeable to adjacent residents or persons, in Violation of §19-17;

f. Carrying on a trade, business, or occupation within the City that is injurious to the health of those who reside in the Vicinity, or suffering any substance Which shall have that effect to remain on the Defendants [owner/operator's] premises, in the Defendants' [owner/operator's] possession, or under the Defendants' [owner/operator's] control, in Violation of §19-26;

g. Failure to comply with a stormwater permit, in Violation of § 19-1 18.7(a);

h. Failure to comply with the requirements of 30 TAC §106 related to Permits by Rule, in Violation of §5A-6(3);

i. Discharging or allowing or permitting the discharge of industrial waste into the stormwater drainage system, in Violation of §19-1 18.2(f)(2);

j. Discharging or allowing or permitting the discharge of asphalt base material into the stormwater drainage system, in Violation of § 1 9-1 18.2(f)(8);

3

k. Discharging or allowing or permitting the discharge of a harmful quantity of dust, resulting from grinding, cutting, or storage 0f materials, into the stormwater drainage system, in Violation of §19-1 18.2(f)(19);

1. Failing to obtain a certificate of occupancy from the building official before using or changing the use of a building, a portion of a building, or land, in Violation of §51A- 1.104(a)(1);

m. Failure to employ best management practices to control and minimize the discharge of materials and substances handled, stored, and generated by Blue Star into the stormwater drainage system, in Violation of § 1 9-1 18.7(a);

n. Failure to eliminate or reduce exposure of garbage and refuse materials to precipitation or runoff prior to disposal, in Violation of §19-1 18.7(b)(6);

o. Placing, storing, and maintaining construction equipment Within the l00-year flood plain in Violation of §51A-5.104(b)(5)(D);

p. Depositing and storing fill and engaging in other development activities in a l00-year flood plain area Without first obtaining a proper Fill Permit or a Flood Plain Alteration Permit from the Director of Dallas Water Utilities, and all other required permits, in Violation of §51A-5.105(a)(1);

q. Using land for an improper purpose, other that one of the enumerated, permitted uses, in Violation of §51A-5.104(a); and

r. Using or occupying, or changing the use or occupancy of, a building, portion of a building, and/or land Without properly obtaining a certificate of occupancy from the building official, in Violation of §51A-1.104.

The above conditions involve an illegal use of land and/or create a substantial risk of injury and adverse health impacts to persons and to property and to the environment.

Despite knowledge of imminent and substantial endangerment to health and the environment from the illegal landfill at the shingle mountain property, Blue Star Recycling, LLC and its managing members have failed to take steps to protect the public health, safety, and environment by taking action to remove the landfill and clean up the property. CCR Equity Holdings One, LLC and its managing member have removed no waste despite being ordered to do so by the state court. The property remains in violation of the RCRA and continues to present imminent and substantial endangerment to Ms. Jackson, her neighbors, the public health and the environment. By failing to take action to remove the landfill, Blue Star Recycling, LLC and its managing members are contributing to and causing harm to the adjoining residential neighborhood.

4

Ms. Jackson is represented by legal counsel Michael M. Daniel and Laura B. Beshara, Daniel & Beshara, P.C., 3301 Elm Street, Dallas, Texas 75226, telephone number (214) 939-9230. If you have any questions about this RCRA Citizens' Suit notice, please call Daniel & Beshara, P.C.

Daniel & Beshara, P.C.
Michael M. Daniel
Laura B. Beshara

cc by First Class Mail:

Marsha Jackson
4920 Choate Road
Dallas, TX 75241

Mr. Toby Baker, **MC 109**
Executive Director
Texas Commission on Environmental Quality
TCEQ
P.O. Box 13087
Austin, TX 78711-3087

Mr. Andrew Wheeler
EPA Administrator
USEPA Headquarters
William Jefferson Clinton Building
1200 Pennsylvania, N.W.
**Mail Code:** 1101A
Washington, DC 20460

Mr. Kenley McQueen
Regional Administrator of EPA
USEPA Region 6
1201 Elm Street, Suite 500
**Mail Code:** ORA
Dallas, TX 75270

5

## TEXAS ASSOCIATION OF REALTORS®
# COMMERCIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©**Texas Association of REALTORS®, Inc. 2014**

## Table of Contents

| No. | Paragraph Description | Pg. |
|---|---|---|
| 1. | Parties | 2 |
| 2. | Leased Premises | 2 |
| 3. | Term | |
| | A. Term | 2 |
| | B. Delay of Occupancy | 2 |
| | C. Certificate of Occupancy | 3 |
| 4. | Rent and Expenses | |
| | A. Base Monthly Rent | 3 |
| | B. Additional Rent | 3 |
| | C. First Full Month's Rent | 3 |
| | D. Prorated Rent | 3 |
| | E. Place of Payment | 3 |
| | F. Method of Payment | 3 |
| | G. Late Charges | 4 |
| | H. Returned Checks | 4 |
| 5. | Security Deposit | 4 |
| 6. | Taxes | 4 |
| 7. | Utilities | 4 |
| 8. | Insurance | 5 |
| 9. | Use and Hours | 6 |
| 10. | Legal Compliance | 6 |
| 11. | Signs | 6 |
| 12. | Access By Landlord | 7 |
| 13. | Move-In Condition | 7 |
| 14. | Move-Out Condition | 7 |
| 15. | Maintenance and Repairs | |
| | A. Cleaning | 7 |
| | B. Conditions Caused by a Party | 8 |
| | C. Repair & Maintenance Responsibility | 8 |
| | D. Repair Persons | 8 |
| | E. HVAC Service Contract | 9 |
| | F. Common Areas | 9 |
| | G. Notice of Repairs | 9 |
| | H. Failure to Repair | 9 |
| 16. | Alterations | 9 |
| 17. | Liens | 9 |
| 18. | Liability | 9 |
| 19. | Indemnity | 10 |
| 20. | Default | 10 |
| 21. | Abandonment, Interruption of Utilities, Removal of Property & Lockout | 10 |
| 22. | Holdover | 10 |
| 23. | Landlord's Lien & Security Interest | 11 |

| No. | Paragraph Description | Pg. |
|---|---|---|
| 24. | Assignment and Subletting | 11 |
| 25. | Relocation | 11 |
| 26. | Subordination | 11 |
| 27. | Estoppel Certificates & Financial Info | 11 |
| 28. | Casualty Loss | 12 |
| 29. | Condemnation | 12 |
| 30. | Attorney's Fees | 12 |
| 31. | Representations | 12 |
| 32. | Brokers | 13 |
| 33. | Addenda | 13 |
| 34. | Notices | 13 |
| 35. | Special Provisions | 14 |
| 36. | Agreement of the Parties | 14 |

**ADDENDA & EXHIBITS** *(check all that apply)*

| | |
|---|---|
| [X] | Exhibit **"A" Legal Description** |
| [X] | Exhibit **"B" Rent Schedule** |
| [ ] | Commercial Lease Addendum for Broker's Fee (TAR-2102) |
| [X] | Commercial Lease Addendum for Expense Reimbursement (TAR-2103) |
| [ ] | Commercial Lease Addendum for Extension Option (TAR-2104) |
| [ ] | Commercial Lease Addendum for Percentage Rent (TAR-2106) |
| [ ] | Commercial Lease Addendum for Parking (TAR-2107) |
| [ ] | Commercial Landlord's Rules and Regulations (TAR-2108) |
| [X] | Commercial Lease Guaranty (TAR-2109) |
| [ ] | Commercial Lease Addendum for Right of First Refusal (TAR-2105) |
| [ ] | Commercial Lease Addendum for Optional Space (TAR-2110) |
| [ ] | Commercial Lease Addendum for Construction (TAR-2111) or (TAR-2112) |
| [ ] | Commercial Lease Addendum for Contingencies (TAR-2119) |
| [ ] | _____ |
| [ ] | _____ |
| [X] | Information About Brokerage Services (TAR-2501) |

Bixby & Associates, Inc., 3401 Beckingham Ct. Flower Mound TX 75022          Phone: (972) 355-7777          Fax:          9505 S Central
Joe Bixby                                     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**EXHIBIT**
# D

**APP. 27**

**TEXAS ASSOCIATION OF REALTORS®**

# COMMERCIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2014

---

**1. PARTIES:** The parties to this lease are:

Landlord: **CCR Equity Holdings One, LLC**

_____ ; and

Tenant: **Blue Star Recycling, LLC**

_____ .

**2. LEASED PREMISES:**

A. Landlord leases to Tenant the following described real property, known as the "leased premises," along with all its improvements *(Check only one box)*:

☐ (1) Multiple-Tenant Property: Suite or Unit Number _____ containing approximately _____ square feet of rentable area in _____ *(project name)* at _____ *(address)* in _____ *(city)*, _____ *(county)*, Texas, which is legally described on attached Exhibit _____ or as follows:
_____
_____
_____ .

☒ (2) Single-Tenant Property: The real property containing approximately **4.3580 Acres** ~~square feet~~ of rentable area at: _____ **9505 South Central Expressway** _____ *(address)* in _____ **Dallas** _____ *(city)*, _____ **Dallas** _____ *(county)*, Texas, which is legally described on attached Exhibit _____ **"A" Legal Description** _____ or as follows:
_____
_____
_____ .

B. If Paragraph 2A(1) applies:
(1) "Property" means the building or complex in which the leased premises are located, inclusive of any common areas, drives, parking areas, and walks; and
(2) the parties agree that the rentable area of the leased premises may not equal the actual or useable area within the leased premises and may include an allocation of common areas in the Property. The rentable area ☐ will ☒ will not be adjusted if re-measured.

**3. TERM:**

A. Term: The term of this lease is _____ **120** _____ months and _____ days, commencing on: _____ **See Exhibit "B" Rent Schedule** _____ (Commencement Date) and ending on _____ **See Exhibit "B" Rent Schedule** _____ (Expiration Date).

B. Delay of Occupancy: If Tenant is unable to occupy the leased premises on the Commencement Date because of construction on the leased premises to be completed by Landlord that is not substantially

DocuSign Envelope ID: BCD23135-86C7-41FF-A7EC-0C66E9A88C4D

**9505 South Central Expressway**
Commercial Lease concerning: **Dallas, TX  75241**

complete or a prior tenant's holding over of the leased premises, Landlord will not be liable to Tenant for such delay and this lease will remain enforceable. In the event of such a delay, the Commencement Date will automatically be extended to the date Tenant is able to occupy the Property and the Expiration Date will also be extended by a like number of days, so that the length of this lease remains unchanged. If Tenant is unable to occupy the leased premises after the 90th day after the Commencement Date because of construction on the leased premises to be completed by Landlord that is not substantially complete or a prior tenant's holding over of the leased premises, Tenant may terminate this lease by giving written notice to Landlord before the leased premises become available to be occupied by Tenant and Landlord will refund to Tenant any amounts paid to Landlord by Tenant. This Paragraph 3B does not apply to any delay in occupancy caused by cleaning or repairs.

C. <u>Certificate of Occupancy</u>: Unless the parties agree otherwise, Tenant is responsible for obtaining a certificate of occupancy for the leased premises if required by a governmental body.

## 4.  **RENT AND EXPENSES:**

A. <u>Base Monthly Rent</u>: On or before the first day of each month during this lease, Tenant will pay Landlord base monthly rent as described on attached Exhibit _____**"B" Rent Schedule**_____ or as follows:

| Dates | | Rate per rentable square foot *(optional)* | | Base Monthly |
|---|---|---|---|---|
| From | To | $ Monthly Rate | $ Annual Rate | Rent $ |
| | | / rsf / month | / rsf / year | |
| | | / rsf / month | / rsf / year | |
| | | / rsf / month | / rsf / year | |
| | | / rsf / month | / rsf / year | |
| | | / rsf / month | / rsf / year | |

B. <u>Additional Rent</u>: In addition to the base monthly rent, Tenant will pay Landlord all other amounts, as provided by the attached *(Check all that apply.)*:
- [X] (1) Commercial Lease Addendum for Expense Reimbursement (TAR-2103)
- [ ] (2) Commercial Lease Addendum for Percentage Rent (TAR-2106)
- [ ] (3) Commercial Lease Addendum for Parking (TAR-2107)
- [ ] (4) _____

All amounts payable under the applicable addenda are deemed to be "rent" for the purposes of this lease.

C. <u>First Full Month's Rent</u>: The first full monthly rent is due on or before _____**Lease Execution**_____
_____ .

D. <u>Prorated Rent</u>: If the Commencement Date is on a day other than the first day of a month, Tenant will pay Landlord as prorated rent, an amount equal to the base monthly rent multiplied by the following fraction: the number of days from the Commencement Date to the first day of the following month divided by the number of days in the month in which this lease commences. The prorated rent is due on or before the Commencement Date.

E. <u>Place of Payment</u>: Tenant will remit all amounts due to Landlord under this lease to the following person at the place stated or to such other person or place as Landlord may later designate in writing:

      Name: **CCR Equity Holdings One, LLC**
      Address: **906 W. McDermott Dr., Ste 116-321**
                   **Allen, TX 75013**

F. <u>Method of Payment</u>: Tenant must pay all rent timely without demand, deduction, or offset, except as permitted by law or this lease. If Tenant fails to timely pay any amounts due under this lease or if any

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     9505 S Central

**APP. 29**

9505 South Central Expressway
Commercial Lease concerning: <u>Dallas, TX  75241</u>

check of Tenant is returned to Landlord by the institution on which it was drawn, Landlord after providing written notice to Tenant may require Tenant to pay subsequent amounts that become due under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

G. <u>Late Charges</u>: If Landlord does not <u>actually receive</u> a rent payment at the designated place of payment within 5 days after the date it is due, Tenant will pay Landlord a late charge equal to 10% of the amount due. In this paragraph, the mailbox is not the agent for receipt for Landlord. The late charge is a cost associated with the collection of rent and Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 20.

H. <u>Returned Checks</u>: Tenant will pay $ <u>35.00</u> for each check Tenant tenders to Landlord which is returned by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment.

5. **SECURITY DEPOSIT:**

A. Upon execution of this lease, Tenant will pay $ <u>5,500.00</u> to Landlord as a security deposit.

B. Landlord may apply the security deposit to any amounts owed by Tenant under this lease. If Landlord applies any part of the security deposit during any time this lease is in effect to amounts owed by Tenant, Tenant must, within 10 days after receipt of notice from Landlord, restore the security deposit to the amount stated.

C. Within 60 days after Tenant surrenders the leased premises and provides Landlord written notice of Tenant's forwarding address, Landlord will refund the security deposit less any amounts applied toward amounts owed by Tenant or other charges authorized by this lease.

6. **TAXES:** Unless otherwise agreed by the parties, Landlord will pay all real property ad valorem taxes assessed against the leased premises.

7. **UTILITIES:**

A. The party designated below will pay for the following utility charges to the leased premises and any connection charges for the utilities. *(Check all that apply.)*

| | N/A | Landlord | Tenant |
|---|---|---|---|
| (1) Water | | | X |
| (2) Sewer | | | X |
| (3) Electric | | | X |
| (4) Gas | | | X |
| (5) Telephone | | | X |
| (6) Internet | | | X |
| (7) Cable | | | X |
| (8) Trash | | | X |
| (9) _____ | | | |
| (10) All other utilities | | | X |

B. The party responsible for the charges under Paragraph 7A will pay the charges directly to the utility service provider. The responsible party may select the utility service provider except that if Tenant selects the provider, any access or alterations to the Property or leased premises necessary for the utilities may be made only with Landlord's prior consent, which Landlord will not unreasonably withhold. If Landlord incurs any liability for utility or connection charges for which Tenant is responsible to pay

(TAR-2101) 4-1-14        Initialed for Identification by Landlord _____ , _____ , and Tenant: _____        Page 4 of 15

**9505 South Central Expressway**
Commercial Lease concerning: **Dallas, TX  75241**

and Landlord pays such amount, Tenant will immediately upon written notice from Landlord reimburse Landlord such amount.

C. <u>Notice</u>: **Tenant should determine if all necessary utilities are available to the leased premises and are adequate for Tenant's intended use.**

~~D. After-Hours HVAC Charges: "HVAC services" means heating, ventilating, and air conditioning of the leased premises. *(Check one box only.)*~~

☐ ~~(1) Landlord is obligated to provide the HVAC services to the leased premises only during the Property's operating hours specified under Paragraph 9C.~~

☐ ~~(2) Landlord will provide the HVAC services to the leased premises during the operating hours specified under Paragraph 9C for no additional charge and will, at Tenant's request, provide HVAC services to the leased premises during other hours for an additional charge of $_____ per hour. Tenant will pay Landlord the charges under this paragraph immediately upon receipt of Landlord's invoice. Hourly charges are charged on a half-hour basis. Any partial hour will be rounded up to the next half hour. Tenant will comply with Landlord's procedures to make a request to provide the additional HVAC services under this paragraph.~~

☐ ~~(3) Tenant will pay for the HVAC services under this lease.~~

8. **INSURANCE:**

A. During all times this lease is in effect, Tenant must, at Tenant's expense, maintain in full force and effect from an insurer authorized to operate in Texas:
   (1) public liability insurance naming Landlord as an additional insured with policy limits on an occurrence basis in a minimum amount of: *(check only (a) or (b) below)*
   ☒ (a) $1,000,000; or
   ☐ (b) $2,000,000.
   If neither box is checked the minimum amount will be $1,000,000.
   (2) personal property damage insurance for the business operations being conducted in the leased premises and contents in the leased premises in an amount sufficient to replace such contents after a casualty loss; and
   ☒ (3) business interruption insurance sufficient to pay 12 months of rent payments;

B. Before the Commencement Date, Tenant must provide Landlord with a copy of insurance certificates evidencing the required coverage. If the insurance coverage is renewed or changes in any manner or degree at any time this lease is in effect, Tenant must, not later than 10 days after the renewal or change, provide Landlord a copy of an insurance certificate evidencing the renewal or change.

C. If Tenant fails to maintain the required insurance in full force and effect at all times this lease is in effect, Landlord may:
   (1) purchase insurance that will provide Landlord the same coverage as the required insurance and Tenant must immediately reimburse Landlord for such expense; or
   (2) exercise Landlord's remedies under Paragraph 20.

D. Unless the parties agree otherwise, Landlord will maintain in full force and effect insurance for: (1) fire and extended coverage in an amount to cover the reasonable replacement cost of the improvements of the Property; and (2) any public liability insurance in an amount that Landlord determines reasonable and appropriate.

E. If there is an increase in Landlord's insurance premiums for the leased premises or Property or its contents that is caused by Tenant, Tenant's use of the leased premises, or any improvements made by or for Tenant, Tenant will, for each year this lease is in effect, pay Landlord the increase immediately

(TAR-2101) 4-1-14       Initialed for Identification by Landlord ____, _____, and Tenant ____       Page 5 of 15

DocuSign Envelope ID: BCD23135-86C7-41FF-A7EC-0C66E9A88C4D

**9505 South Central Expressway**

Commercial Lease concerning: <u>Dallas, TX  75241</u>

after Landlord notifies Tenant of the increase. Any charge to Tenant under this Paragraph 8E will be equal to the actual amount of the increase in Landlord's insurance premium.

### 9. USE AND HOURS:

A. Tenant may use the leased premises for the following purpose and no other: <u>**Asphalt Shingle Recycling**</u>
_____
_____.

B. Unless otherwise specified in this lease, Tenant will operate and conduct its business in the leased premises during business hours that are typical of the industry in which Tenant represents it operates.

C. The Property maintains operating hours of *(specify hours, days of week, and if inclusive or exclusive of weekends and holidays)*: <u>**Common for above use**</u>
_____
_____.

### 10. LEGAL COMPLIANCE:

A. Tenant may not use or permit any part of the leased premises or the Property to be used for:
  (1) any activity which is a nuisance or is offensive, noisy, or dangerous;
  (2) any activity that interferes with any other tenant's normal business operations or Landlord's management of the Property;
  (3) any activity that violates any applicable law, regulation, zoning ordinance, restrictive covenant, governmental order, owners' association rules, tenants' association rules, Landlord's rules or regulations, or this lease;
  (4) any hazardous activity that would require any insurance premium on the Property or leased premises to increase or that would void any such insurance;
  (5) any activity that violates any applicable federal, state, or local law, including but not limited to those laws related to air quality, water quality, hazardous materials, wastewater, waste disposal, air emissions, or other environmental matters;
  (6) the permanent or temporary storage of any hazardous material; or
  (7) _____
_____.

B. "Hazardous material" means any pollutant, toxic substance, hazardous waste, hazardous material, hazardous substance, solvent, or oil as defined by any federal, state, or local environmental law, regulation, ordinance, or rule existing as of the date of this lease or later enacted.

C. Landlord does not represent or warrant that the leased premises or Property conform to applicable restrictions, zoning ordinances, setback lines, parking requirements, impervious ground cover ratio requirements, and other matters that may relate to Tenant's intended use. <u>Tenant must satisfy itself that the leased premises may be used as Tenant intends by independently investigating all matters related to the use of the leased premises or Property. Tenant agrees that it is not relying on any warranty or representation made by Landlord, Landlord's agent, or any broker concerning the use of the leased premises or Property.</u>

### 11. SIGNS:

A. Tenant may not post or paint any signs or place any decoration outside the leased premises or on the Property without Landlord's written consent. Landlord may remove any unauthorized sign or decorations, and Tenant will promptly reimburse Landlord for its cost to remove any unauthorized sign or decorations.

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        9505 S Central

**APP. 32**

**9505 South Central Expressway**
Commercial Lease concerning: <u>**Dallas, TX  75241**</u>

B. Any authorized sign must comply with all laws, restrictions, zoning ordinances, and any governmental order relating to signs on the leased premises or Property. Landlord may temporarily remove any authorized sign to complete repairs or alterations to the leased premises or the Property.

C. By providing written notice to Tenant before this lease ends, Landlord may require Tenant, upon move-out and at Tenant's expense, to remove, without damage to the Property or leased premises, any or all signs or decorations that were placed on the Property or leased premises by or at the request of Tenant. Any signs or decorations that Landlord does not require Tenant to remove and that are fixtures, become the property of the Landlord and must be surrendered to Landlord at the time this lease ends.

**12. ACCESS BY LANDLORD:**

A. During Tenant's normal business hours Landlord may enter the leased premises for any reasonable purpose, including but not limited to purposes for repairs, maintenance, alterations, and showing the leased premises to prospective tenants or purchasers. Landlord may access the leased premises after Tenant's normal business hours if: (1) entry is made with Tenant's permission; or (2) entry is necessary to complete emergency repairs. Landlord will not unreasonably interfere with Tenant's business operations when accessing the leased premises.

B. During the last __120__ days of this lease, Landlord may place a "For Lease" or similarly worded sign on the leased premises.

**13. MOVE-IN CONDITION:** Tenant has inspected the leased premises and accepts it in its present (as-is) condition unless expressly noted otherwise in this lease or in an addendum. <u>Landlord and any agent have made no express or implied warranties as to the condition or permitted use of the leased premises or Property.</u>

**14. MOVE-OUT CONDITION AND FORFEITURE OF TENANT'S PERSONAL PROPERTY:**

A. At the time this lease ends, Tenant will surrender the leased premises in the same condition as when received, except for normal wear and tear. Tenant will leave the leased premises in a clean condition free of all trash, debris, personal property, hazardous materials, and environmental contaminants.

B. If Tenant leaves any personal property in the leased premises after Tenant surrenders possession of the leased premises, Landlord may: (1) require Tenant, at Tenant's expense, to remove the personal property by providing written notice to Tenant; or (2) retain such personal property as forfeited property to Landlord.

C. "Surrender" means vacating the leased premises and returning all keys and access devices to Landlord. "Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.

D. By providing written notice to Tenant before this lease ends, Landlord may require Tenant, upon move-out and at Tenant's expense, to remove, without damage to the Property or leased premises, any or all fixtures that were placed on the Property or leased premises by or at the request of Tenant. Any fixtures that Landlord does not require Tenant to remove become the property of the Landlord and must be surrendered to Landlord at the time this lease ends.

**15. MAINTENANCE AND REPAIRS:**

A. <u>Cleaning</u>: Tenant must keep the leased premises clean and sanitary and promptly dispose of all garbage in appropriate receptacles. ☐ Landlord ☒ Tenant will provide, at its expense, janitorial services to the leased premises that are customary and ordinary for the property type. Tenant will maintain any grease trap on the Property which Tenant uses, including but not limited to periodic

DocuSign Envelope ID: BCD23135-86C7-41FF-A7EC-0C66E9A88C4D

Case 3:20-cv-00967-M   Document 11-1   Filed 06/19/20   Page 34 of 60   PageID 92
9505 South Central Expressway
Commercial Lease concerning: Dallas, TX 75241

emptying and cleaning, as well as making any modification to the grease trap that may be necessary to comply with any applicable law.

B. <u>Repairs of Conditions Caused by a Party</u>: Each party must promptly repair a condition in need of repair that is caused, either intentionally or negligently, by that party or that party's guests, patrons, invitees, contractors or permitted subtenants.

C. <u>Repair and Maintenance Responsibility</u>: Except as otherwise provided by this Paragraph 15, the party designated below, at its expense, is responsible to maintain and repair the following specified items in the leased premises (if any). The specified items must be maintained in clean and good operable condition. If a governmental regulation or order requires a modification to any of the specified items, the party designated to maintain the item must complete and pay the expense of the modification. The specified items include and relate only to real property in the leased premises. Tenant is responsible for the repair and maintenance of its personal property. *(Check all that apply.)*

| | N/A | Landlord | Tenant |
|---|---|---|---|
| (1) Foundation, exterior walls, roof, and other structural components | | | X |
| (2) Glass and windows | | | X |
| (3) Fire protection equipment | | | X |
| (4) Fire sprinkler systems | | | X |
| (5) Exterior & overhead doors, including closure devices, molding, locks, and hardware | | | X |
| (6) Grounds maintenance, including landscaping and irrigation systems | | | X |
| (7) Interior doors, including closure devices, frames, molding, locks, and hardware | | | X |
| (8) Parking areas and walks | | | X |
| (9) Plumbing systems, drainage systems and sump pumps | | | X |
| (10) Electrical systems, mechanical systems | | | X |
| (11) Ballast and lamp replacement | | | X |
| (12) Heating, Ventilation and Air Conditioning (HVAC) systems | | | X |
| (13) HVAC system replacement | | | X |
| (14) Signs and lighting: | | | |
| (a) Pylon | | | X |
| (b) Facia | | | X |
| (c) Monument | | | X |
| (d) Door/Suite | | | X |
| (e) Other: | | | X |
| (15) Extermination and pest control, excluding wood-destroying insects. | | | X |
| (16) Fences and Gates | | | X |
| (17) Storage yards and storage buildings | | | X |
| (18) Wood-destroying insect treatment and repairs | | | X |
| (19) Cranes and related systems | | | X |
| (20) | | | |
| (21) | | | |
| (22) All other items and systems. | | | X |

D. <u>Repair Persons</u>: Repairs must be completed by trained, qualified, and insured repair persons.

**9505 South Central Expressway**
Commercial Lease concerning: <u>Dallas, TX  75241</u>

E. ~~HVAC Service Contract: If Tenant maintains the HVAC system under Paragraph 15C(12), Tenant~~ ☐ ~~is~~ ☐ ~~is not required to maintain, at its expense, a regularly scheduled maintenance and service contract for the HVAC system. The maintenance and service contract must be purchased from a HVAC maintenance company that regularly provides such contracts to similar properties. If Tenant fails to maintain a required HVAC maintenance and service contract in effect at all times during this lease, Landlord may do so and Tenant will reimburse Landlord for the expense of such maintenance and service contract or Landlord may exercise Landlord's remedies under Paragraph 20.~~

F. ~~Common Areas: Landlord will maintain any common areas in the Property in a manner as Landlord determines to be in the best interest of the Property. Landlord will maintain any elevator and signs in the common area. Landlord may change the size, dimension, and location of any common areas, provided that such change does not materially impair Tenant's use and access to the leased premises. Tenant has the non-exclusive license to use the common areas in compliance with Landlord's rules and regulations. Tenant may not solicit any business in the common areas or interfere with any other person's right to use the common areas. This paragraph does not apply if Paragraph 2A(2) applies.~~

G. <u>Notice of Repairs</u>: Tenant must promptly notify Landlord of any item that is in need of repair and that is Landlord's responsibility to repair. All requests for repairs to Landlord must be in writing.

H. <u>Failure to Repair</u>: Landlord must make a repair for which Landlord is responsible within a reasonable period of time after Tenant provides Landlord written notice of the needed repair. If Tenant fails to repair or maintain an item for which Tenant is responsible within 10 days after Landlord provides Tenant written notice of the needed repair or maintenance, Landlord may: (1) repair or maintain the item, without liability for any damage or loss to Tenant, and Tenant must immediately reimburse Landlord for the cost to repair or maintain; or (2) exercise Landlord's remedies under Paragraph 20.

**16. ALTERATIONS:**

A. Tenant may not alter (including making any penetrations to the roof, exterior walls or foundation), improve, or add to the Property or the leased premises without Landlord's written consent. Landlord will not unreasonably withhold consent for the Tenant to make reasonable non-structural alterations, modifications, or improvements to the leased premises.

B. Tenant may not alter any locks or any security devices on the Property or the leased premises without Landlord's consent. If Landlord authorizes the changing, addition, or rekeying of any locks or other security devices, Tenant must immediately deliver the new keys and access devices to Landlord.

C. If a governmental order requires alteration or modification to the leased premises, the party obligated to maintain and repair the item to be modified or altered as designated in Paragraph 15 will, at its expense, modify or alter the item in compliance with the order and in compliance with Paragraphs 16A and 17.

D. Any alterations, improvements, fixtures or additions to the Property or leased premises installed by either party during the term of this lease will become Landlord's property and must be surrendered to Landlord at the time this lease ends, except for those fixtures Landlord requires Tenant to remove under Paragraph 11 or 14 or if the parties agree otherwise in writing.

**17. LIENS:** Tenant may not do anything that will cause the title of the Property or leased premises to be encumbered in any way. If Tenant causes a lien to be filed against the Property or leased premises, Tenant will within 20 days after receipt of Landlord's demand: (1) pay the lien and have the lien released of record; or (2) take action to discharge the lien. Tenant will provide Landlord a copy of any release Tenant obtains pursuant to this paragraph.

**18. LIABILITY:** <u>To the extent permitted by law, Landlord is NOT responsible to Tenant or Tenant's employees, patrons, guests, or invitees for any damages, injuries or losses to person or property caused by:</u>

DocuSign Envelope ID: BCD23135-86C7-41FF-A7EC-0C66E9A88C4D

Case 3:20-cv-00967-M   Document 11-1   Filed 06/19/20   Page 36 of 60   PageID 94
9505 South Central Expressway
Commercial Lease concerning: Dallas, TX 75241

A. an act, omission, or neglect of: Tenant; Tenant's agent; Tenant's guest; Tenant's employees; Tenant's patrons; Tenant's invitees; or any other tenant on the Property;

B. fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, riot, strike, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, environmental contaminants, or other occurrences or casualty losses.

19. **INDEMNITY:** Each party will indemnify, defend, and hold the other party harmless from any property damage, personal injury, suits, actions, liabilities, damages, cost of repairs or service to the leased premises or Property, or any other loss caused, negligently or otherwise, by that party or that party's employees, patrons, guests, or invitees.

20. **DEFAULT:**

A. If Landlord fails to comply with this lease within 30 days after Tenant notifies Landlord of Landlord's failure to comply, Landlord will be in default and Tenant may seek any remedy provided by law. If, however, Landlord's non-compliance reasonably requires more than 30 days to cure, Landlord will not be in default if the cure is commenced within the 30-day period and is diligently pursued.

B. If Landlord does not actually receive at the place designated for payment any rent due under this lease within 5 days after it is due, Tenant will be in default. If Tenant fails to comply with this lease for any other reason within 10 days after Landlord notifies Tenant of its failure to comply, Tenant will be in default.

C. If Tenant is in default, Landlord may, with at least 3 days written notice to Tenant: (i) terminate this lease, or (ii) terminate Tenant's right to occupy the leased premises without terminating this lease and may accelerate all rents which are payable during the remainder of this lease or any renewal period. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by using commercially reasonable means. If Tenant is in default, Tenant will be liable for:
   (1) any lost rent;
   (2) Landlord's cost of reletting the leased premises, including brokerage fees, advertising fees, and other fees necessary to relet the leased premises;
   (3) repairs to the leased premises for use beyond normal wear and tear;
   (4) all Landlord's costs associated with eviction of Tenant, such as attorney's fees, court costs, and prejudgment interest;
   (5) all Landlord's costs associated with collection of rent such as collection fees, late charges, and returned check charges;
   (6) cost of removing any of Tenant's equipment or fixtures left on the leased premises or Property;
   (7) cost to remove any trash, debris, personal property, hazardous materials, or environmental contaminants left by Tenant or Tenant's employees, patrons, guests, or invitees in the leased premises or Property;
   (8) cost to replace any unreturned keys or access devices to the leased premises, parking areas, or Property; and
   (9) any other recovery to which Landlord may be entitled under this lease or under law.

21. **ABANDONMENT, INTERRUPTION OF UTILITIES, REMOVAL OF PROPERTY, AND LOCKOUT:** Chapter 93 of the Texas Property Code governs the rights and obligations of the parties with regard to: (a) abandonment of the leased premises; (b) interruption of utilities; (c) removal of Tenant's property; and (d) "lock-out" of Tenant.

22. **HOLDOVER:** If Tenant fails to vacate the leased premises at the time this lease ends, Tenant will become a tenant-at-will and must vacate the leased premises immediately upon receipt of demand from Landlord. No holding over by Tenant, with or without the consent of Landlord, will extend this lease. Tenant will

**9505 South Central Expressway**
Commercial Lease concerning: **Dallas, TX  75241**

indemnify Landlord and any prospective tenants for any and all damages caused by the holdover. Rent for any holdover period will be 150% of the base monthly rent plus any additional rent calculated on a daily basis and will be immediately due and payable daily without notice or demand.

**23. LANDLORD'S LIEN AND SECURITY INTEREST:** To secure Tenant's performance under this lease, <u>Tenant grants to Landlord a lien and security interest against all of Tenant's nonexempt personal property that is in the leased premises or on the Property.</u> This lease is a security agreement for the purposes of the Uniform Commercial Code. Landlord may file a financing statement to perfect Landlord's security interest under the Uniform Commercial Code.

**24. ASSIGNMENT AND SUBLETTING:** Landlord may assign this lease to any subsequent owner of the Property. Tenant may not assign this lease or sublet any part of the leased premises without Landlord's written consent. An assignment of this lease or subletting of the leased premises without Landlord's written consent is voidable by Landlord. If Tenant assigns this lease or sublets any part of the leased premises, Tenant will remain liable for all of Tenant's obligations under this lease regardless if the assignment or sublease is made with or without the consent of Landlord.

**25. ~~RELOCATION:~~**

☐ A. ~~By providing Tenant with not less than 90 days advanced written notice, Landlord may require Tenant to relocate to another location in the Property, provided that the other location is equal in size or larger than the leased premises then occupied by Tenant and contains similar leasehold improvements. Landlord will pay Tenant's reasonable out-of-pocket moving expenses for moving to the other location. "Moving expenses" means reasonable expenses payable to professional movers, utility companies for connection and disconnection fees, wiring companies for connecting and disconnecting Tenant's office equipment required by the relocation, and printing companies for reprinting Tenant's stationary and business cards. A relocation of Tenant will not change or affect any other provision of this lease that is then in effect, including rent and reimbursement amounts, except that the description of the suite or unit number will automatically be amended.~~

☐ B. ~~Landlord may not require Tenant to relocate to another location in the Property without Tenant's prior consent.~~

**26. SUBORDINATION:**

A. This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to:
   (1) any lien, encumbrance, or ground lease now or hereafter placed on the leased premises or the Property that Landlord authorizes;
   (2) all advances made under any such lien, encumbrance, or ground lease;
   (3) the interest payable on any such lien or encumbrance;
   (4) any and all renewals and extensions of any such lien, encumbrance, or ground lease;
   (5) any restrictive covenant affecting the leased premises or the Property; and
   (6) the rights of any owners' association affecting the leased premises or Property.

B. Tenant must, on demand, execute a subordination, attornment, and non-disturbance agreement that Landlord may request that Tenant execute, provided that such agreement is made on the condition that this lease and Tenant's rights under this lease are recognized by the lien-holder.

**27. ESTOPPEL CERTIFICATES & FINANCIAL INFORMATION:**

A. Within 10 days after receipt of a written request from Landlord, Tenant will execute and deliver to Landlord an estoppel certificate that identifies the terms and conditions of this lease.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     9505 S Central

**APP. 37**

DocuSign Envelope ID: BCD23135-86C7-41FF-A7EC-0C66E9A88C4D

**9505 South Central Expressway**
Commercial Lease concerning: **Dallas, TX  75241**

B. Within 30 days after receipt of a written request from Landlord, Tenant will provide to Landlord Tenant's current financial information (balance sheet and income statement). Landlord may request the financial information no more frequently than once every 12 months.

## 28. CASUALTY LOSS:

A. Tenant must immediately notify Landlord of any casualty loss in the leased premises. Within 20 days after receipt of Tenant's notice of a casualty loss, Landlord will notify Tenant if the leased premises are less than or more than 50% unusable, on a per square foot basis, and if Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty loss.

B. If the leased premises are less than 50% unusable and Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty, Landlord will restore the leased premises to substantially the same condition as before the casualty. If Landlord fails to substantially restore within the time required, Tenant may terminate this lease.

C. If the leased premises are more than 50% unusable and Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty, Landlord may: (1) terminate this lease; or (2) restore the leased premises to substantially the same condition as before the casualty. If Landlord chooses to restore and does not substantially restore the leased premises within the time required, Tenant may terminate this lease.

D. If Landlord notifies Tenant that Landlord cannot substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty loss, Landlord may: (1) choose not to restore and terminate this lease; or (2) choose to restore, notify Tenant of the estimated time to restore, and give Tenant the option to terminate this lease by notifying Landlord within 10 days.

E. If this lease does not terminate because of a casualty loss, rent will be reduced from the date Tenant notifies Landlord of the casualty loss to the date the leased premises are substantially restored by an amount proportionate to the extent the leased premises are unusable.

## 29. CONDEMNATION: If after a condemnation or purchase in lieu of condemnation the leased premises are totally unusable for the purposes stated in this lease, this lease will terminate. If after a condemnation or purchase in lieu of condemnation the leased premises or Property are partially unusable for the purposes of this lease, this lease will continue and rent will be reduced in an amount proportionate to the extent the leased premises are unusable. Any condemnation award or proceeds in lieu of condemnation are the property of Landlord and Tenant has no claim to such proceeds or award. Tenant may seek compensation from the condemning authority for its moving expenses and damages to Tenant's personal property.

## 30. ATTORNEY'S FEES: Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, reasonable attorney's fees, and all other costs of litigation from the nonprevailing party.

## 31. REPRESENTATIONS:

A. Tenant's statements in this lease and any application for rental are material representations relied upon by Landlord. Each party signing this lease represents that he or she is of legal age to enter into a binding contract and is authorized to sign the lease. If Tenant makes any misrepresentation in this lease or in any application for rental, Tenant is in default.

B. Landlord is not aware of any material defect on the Property that would affect the health and safety of an ordinary person or any environmental hazard on or affecting the Property that would affect the

(TAR-2101) 4-1-14        Initialed for Identification by Landlord: _____ , _____ , and Tenant: _____        Page 12 of 15

**APP. 38**

**9505 South Central Expressway**

Commercial Lease concerning: **Dallas, TX  75241**

health or safety of an ordinary person, except: _____
_____.

C. Each party and each signatory to this lease represents that: (1) it is not a person named as a Specially Designated National and Blocked Person as defined in Presidential Executive Order 13224; (2) it is not acting, directly or indirectly, for or on behalf of a Specially Designated and Blocked Person; and (3) is not arranging or facilitating this lease or any transaction related to this lease for a Specially Designated and Blocked Person. Any party or any signatory to this lease who is a Specially Designated and Blocked person will indemnify and hold harmless any other person who relies on this representation and who suffers any claim, damage, loss, liability or expense as a result of this representation.

## 32. BROKERS:

A. The brokers to this lease are:

| Principal Broker: | Cooperating Broker: |
|---|---|
| **Scott Brown Commercial** | **N/A** |
| Agent: **Joe Bixby** | Agent: |
| Address: **1400 Dallas Drive** | Address: |
| **Denton, TX 76205** | |
| Phone & Fax: **(940)320-1200** | Phone & Fax: |
| E-mail: **Joe@SBPcommercial.com** | E-mail: |
| License No.: **0389414** | License No.: |

Principal Broker: *(Check only one box)*   Cooperating Broker represents Tenant.
- [X] represents Landlord only.
- [ ] represents Tenant only.
- [ ] is an intermediary between Landlord and Tenant.

B. <u>Fees:</u>

- [X] (1) Principal Broker's fee will be paid according to: *(Check only one box)*.
  - [X] (a) a separate written commission agreement between Principal Broker and:
    - [X] Landlord [ ] Tenant.
  - [ ] (b) the attached Commercial Lease Addendum for Broker's Fee (TAR-2102).

- [ ] (2) Cooperating Broker's fee will be paid according to: *(Check only one box)*.
  - [ ] (a) a separate written commission agreement between Cooperating Broker and:
    - [ ] Principal Broker [ ] Landlord [ ] Tenant.
  - [ ] (b) the attached Commercial Lease Addendum for Broker's Fee (TAR-2102).

**33. ADDENDA:** Incorporated into this lease are the addenda, exhibits and other information marked in the Addenda and Exhibit section of the Table of Contents. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at its discretion, amend from time to time.

**34. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by facsimile transmission to:

<u>Landlord</u> at:   **CCR Equity Holdings One, LLC**
Address: **906 W. McDermott Dr., Ste 116-321, Allen, TX 75013**

(TAR-2101) 4-1-14   Initialed for Identification by Landlord: _____ , _____ , and Tenant: _____   Page 13 of 15

**9505 South Central Expressway**

Commercial Lease concerning: <u>Dallas, TX  75241</u>

Phone: **(972)679-4287** _____ Fax: _____

and a copy to: _____

Address: _____

Phone: _____ Fax: _____

☐ Landlord also consents to receive notices by e-mail at: _____

<u>Tenant</u> at the leased premises,

and a copy to: _____

Address: _____

Phone: _____ Fax: _____

☐ Tenant also consents to receive notices by e-mail at: _____

## 35. SPECIAL PROVISIONS:

## 36. AGREEMENT OF PARTIES:

A. <u>Entire Agreement</u>: This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. <u>Binding Effect</u>: This lease is binding upon and inures to the benefit of the parties and their respective heirs, executors, administrators, successors, and permitted assigns.

C. <u>Joint and Several</u>: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, or refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its renewal, or its termination is binding on all Tenants.

D. <u>Controlling Law</u>: The laws of the State of Texas govern the interpretation, performance, and enforcement of this lease.

E. <u>Severable Clauses</u>: If any clause in this lease is found invalid or unenforceable by a court of law, the remainder of this lease will not be affected and all other provisions of this lease will remain valid and enforceable.

F. <u>Waiver</u>: Landlord's delay, waiver, or non-enforcement of acceleration, contractual or statutory lien, rental due date, or any other right will not be deemed a waiver of any other or subsequent breach by Tenant or any other term in this lease.

(TAR-2101) 4-1-14     Initialed for Identification by Landlord _____ , _____ , and Tenant: _____     Page 14 of 15

Commercial Lease concerning: Dallas, TX  75241

G. <u>Quiet Enjoyment</u>: Provided that Tenant is not in default of this lease, Landlord covenants that Tenant will enjoy possession and use of the leased premises free from material interference.

H. <u>Force Majeure</u>: If Landlord's performance of a term in this lease is delayed by strike, lock-out, shortage of material, governmental restriction, riot, flood, or any cause outside Landlord's control, the time for Landlord's performance will be abated until after the delay.

I. <u>Time</u>: Time is of the essence. The parties require strict compliance with the times for performance.

**Brokers are not qualified to render legal advice, property inspections, surveys, engineering studies, environmental assessments, tax advice, or compliance inspections. The parties should seek experts to render such services. READ THIS LEASE CAREFULLY. If you do not understand the effect of this Lease, consult your attorney BEFORE signing.**

Landlord: CCR Equity Holdings One, LLC _____

_____

By: Cabe Chadick _____

By (signature): *Cabe Chadick*          3/8/2018
Printed Name: Cabe Chadick
Title: Manager _____     Date: _____

By: _____

By (signature): _____
Printed Name: _____
Title: _____     Date: _____

Tenant: Blue Star Recycling, LLC _____

_____

By: Chris Ganter _____

By (signature): _____          3/8/2018
Printed Name: Chris Ganter
Title: _____     Date: _____

By: _____

By (signature): _____
Printed Name: _____
Title: _____     Date: _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          9505 S Central

**APP. 41**

## Scott Brown Commercial

## EXHIBIT "B"

## RENT SCHEDULE

The parties below refer to their Commercial Lease (the "Lease") executed March 7, 2018, regarding the Leased Premises located at 9505 South Central Expressway, Dallas, Texas and specifically its provisions noted below.  In the event of a conflict between this Exhibit "B" (the "Rent Schedule") and the Lease, the terms of this Rent Schedule shall control.

Landlord and Tenant agree to the following:

**1.01 Lease Commencement Date.**  The Lease Commencement Date will be defined as the day of Closing and Funding of the Purchase and Sales Agreement between Comet Auto Salvage, Inc., as Seller and CCR Equity Holdings One, LLC, as Buyer, for the certain property located at 9505 South Central Expressway, Dallas County, Dallas Texas.

**1.02 Lease Expiration Date.**  The Lease Expiration Date will be defined as the last day of the one hundred twentieth (120th) month following the Lease Commencement Date.

**1.03 Base Rent.**  The base rent for each month during the term of the Lease shall be as follows:

| | |
|---|---|
| Month 1 through Month 12 | $5,500 |
| Month 13 through Month 24 | $5,610 |
| Month 25 through Month 36 | $5,723 |
| Month 37 through Month 48 | $5,838 |
| Month 49 through Month 60 | $5,955 |
| Month 61 through Month 72 | $6,075 |
| Month 73 through Month 84 | $6,197 |
| Month 85 through Month 96 | $6,321 |
| Month 97 through Month 108 | $6,448 |
| Month 109 through Month 120 | $6,577 |

**Landlord:**

CCR Equity Holdings One, LLC

By: _Cabe Chadick_
EF905BF585B244D...

Printed name:  Cabe Chadick

Date: ___3/8/2018___

**Tenant:**

Blue Star Recycling, LLC

By: _____
585968C160DF43C...

Printed name:  Chris Ganter

Date: ___3/8/2018___

TEXAS ASSOCIATION OF REALTORS®
# COMMERCIAL LEASE ADDENDUM FOR EXPENSE REIMBURSEMENT
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2010

**ADDENDUM TO THE COMMERCIAL LEASE BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE LEASED PREMISES AT** 9505 South Central Expressway, Dallas, TX 75241

In addition to rent stated in the lease, Tenant will pay Landlord the additional rent described in this addendum. Tenant will pay the additional rent each month at the time the base-monthly rent in the lease is due.

A. Definitions:

(1) *"Tenant's pro rata share"* is ___100.000___ %.

(2) *"CAM"* means all of Landlord's expenses reasonably incurred to maintain, repair, operate, manage, and secure the Property (for example, security, lighting, painting, cleaning, decorations, utilities, trash removal, pest control, promotional expenses, and other expenses reasonably related the Property's operations); CAM does not include capital expenditures, interest, depreciation, tenant improvements, insurance, taxes, or brokers' leasing fees Notwithstanding the foregoing, CAM does include the amortized costs incurred by Landlord in making capital improvements or other modifications to the Property to the extent such improvements or modifications reduce CAM overall. These costs will be amortized over the useful life of the improvement or modification on a straight-line basis; however, in no event will the charge for such amortization included in CAM exceed the actual reduction in CAM achieved by the improvements and modifications.

(3) *"Insurance"* means Landlord's costs to insure the leased premises and the Property including but not limited to insurance for casualty loss, general liability, and reasonable rent loss.

(4) *"Taxes"* means the real property ad valorem taxes assessed against the leased premises and Property inclusive of all general and special assessments and surcharges.

(5) *"Structural"* means all of Landlord's expenses reasonably incurred to maintain, repair, and replace the roof, foundation, exterior walls, load bearing walls and other structural components of the Property.

B. Method: The additional rent will be calculated under the following method:
*Note: "CAM" does not include taxes and insurance costs.*

☐ (1) ~~Base-year expenses: Each month Tenant will pay Tenant's pro rata share of the projected monthly expenses for the Property that exceed the amount of the monthly base-year expenses for the calendar year_____ for:~~ ☐ ~~taxes;~~ ☐ ~~insurance;~~ ☐ ~~CAM;~~ ☐ ~~structural; and~~ _____.

☐ (2) ~~Expense stop: Each month Tenant will pay Tenant's pro rata share of the projected monthly expenses for the Property that exceed $_____ per square foot per year for:~~ ☐ ~~taxes;~~ ☐ ~~insurance;~~ ☐ ~~CAM;~~ ☐ ~~structural; and~~ _____.

☒ (3) Net: Each month Tenant will pay Tenant's pro rata share of the projected monthly expenses for the Property for: ☒ taxes; ☐ insurance; ☐ CAM; ☐ structural; and ☐ _____.

C. Projected Monthly Expenses: On or about December 31 of each calendar year, Landlord will project the applicable monthly expenses (those that Tenant is to pay under this addendum) for the following calendar year and will notify Tenant of the projected expenses. The projected expenses are based on Landlord's estimates of such expenses. The actual expenses may vary.

(TAR-2103) 1-26-10      Initialed for Identification by Landlord: _____, _____, and Tenant: _____      Page 1 of 2

Bixby & Associates, Inc., 3401 Beckingham Ct. Flower Mound TX 75022                Phone: (972) 355-7777      Fax:                9505 S Central
Joe Bixby                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026      www.zipLogix.com

APP. 43

DocuSign Envelope ID: BCD23135-86C7-41FF-A7EC-0C66E9A88C4D

Expense Reimbursement Addendum concerning  **9505 South Central Expressway, Dallas, TX  75241**

<u>Notice</u>: The applicable projected expenses at the time which the above-referenced lease commences are shown in the table below. The total area of the Property presently used by Landlord for calculating expense reimbursements is _____4.3580_____ ~~rentable square feet~~ (including any add on factor for common areas).

| Projected Expenses | |
|---|---|
| $ Monthly Rate | $ Annual Rate |
| **102.42**  ~~/ rsf /~~ month | **1,229.00**  ~~/ rsf /~~ year |

D.  <u>Reconciliation</u>: Within a reasonable time after the end of each calendar year, Landlord will notify Tenant of the actual costs of the applicable expenses (those that Tenant is to pay under this addendum) for the previous year. If the actual costs of the applicable expenses exceed the amounts paid or owed by Tenant for the previous year, Tenant must pay the deficient amount to Landlord within 30 days after Landlord notifies Tenant of the deficient amount. If the actual costs of the applicable expenses are less than the amounts paid by Tenant for the previous year, Landlord will refund the excess to Tenant or will credit the excess to Tenant's next rent payment. Tenant may audit or examine those items in Landlord's records that relate to Tenant's obligations under this addendum. Landlord will promptly refund to Tenant any overpayment revealed by an audit or examination. If the audit or examination reveals an error of more than 5% over the amounts Landlord collected in a calendar year from Tenant under this addendum, Landlord will pay the reasonable cost of the audit or examination. Landlord may not seek a deficiency from Tenant under this paragraph if Landlord fails to timely provide the required notice.

E.  <u>Special Provisions</u>:

Landlord:   <u>**CCR Equity Holdings One, LLC**</u>          Tenant:  <u>**Blue Star Recycling, LLC**</u>

By: **Cabe Chadick**                              By: **Chris Ganter**

By (signature): _Cabe Chadick_                    By (signature): _____

Printed Name: ~~**Cabe Chadick**~~               Printed Name: ~~**Chris Ganter**~~

Title: **Manager**                               Title: _____

By: _____                                By: _____

By (signature): _____                    By (signature): _____

Printed Name: _____                      Printed Name: _____

Title: _____                             Title: _____

(TAR-2103) 1-26-10                                                            Page 2 of 2

**APP. 44**

## TEXAS ASSOCIATION OF REALTORS®
# COMMERCIAL LEASE GUARANTY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2010

**GUARANTY TO COMMERCIAL LEASE CONCERNING THE LEASED PREMISES AT 9505 South Central Expressway, Dallas, TX  75241** between **CCR Equity Holdings One, LLC** (Landlord) and **Blue Star Recycling, LLC** (Tenant).

A. In consideration for Landlord leasing the leased premises to Tenant, the undersigned Guarantor (whether one or more) guarantee Tenant's performance under the above-referenced lease.

B. If Tenant fails to timely make any payment under the lease, Guarantors will promptly make such payment to Landlord at the place of payment specified in the lease. Guarantor is responsible for any property damage to the leased premises or Property (as defined in the lease) for which Tenant is responsible under the lease. If Tenant breaches the lease, Guarantor will: (i) cure the breach as may be required of Tenant by the lease; or (ii) compensate Landlord for Landlord's loss resulting from the breach.

C. Guarantor guarantees Tenant's obligations under the lease regardless of any modification, amendment, renewal, extension, or breach of the lease. Guarantor waives any rights to notices of acceptance, modification, amendment, extension, or breach of the lease. Each Guarantor is jointly and severally liable for all provisions of this guaranty. This guaranty is binding upon Guarantor's heirs, executors, administrators, successors, and assigns. Filing for bankruptcy by Tenant will not diminish Guarantor's obligations under this guaranty.

D. The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this guaranty. Any person who is a prevailing party in any legal proceeding brought under or related to this guaranty is entitled to recover attorney's fees from the nonprevailing party.

E. Guarantor authorizes Landlord to obtain a copy of any consumer or credit report of Guarantor from any consumer reporting agency and to verify relevant information related to Guarantor's creditworthiness from other persons such as banks, creditors, employers, existing and previous landlords, and other persons.

F. Guarantor will provide Guarantor's current financial information (balance sheet and income statement) to Landlord within 30 days after request by Landlord. Landlord may request the financial information no more frequently than once every 12 months.

G. Special Provisions:

**Guarantor:**

Signature _____
DocuSigned by:

Printed Name: **Chris Ganter**

Address: **10015 Rearwin Lane**
         **McKinney, TX 76071**

Phone: **(214)680-1720** _____ Fax: _____

SS# or Tax ID#: Redacted _____ Date: 3/8/2018

**Witness:** _____

**Guarantor:**

Signature _____

Printed Name: _____

Address: _____

Phone: _____ Fax: _____

SS# or Tax ID#: _____ Date: _____

**Witness:** _____

(TAR-2109) 1-26-10                                                                                                      Page 1 of 1

Bixby & Associates, Inc., 3401 Beckingham Ct. Flower Mound TX 75022                        Phone: (972) 355-7777        Fax:                         9505 S Central
Joe Bixby                                    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

APP. 45

**Scott Brown Commercial**

**EXHIBIT "A"**

**<ins>LEGAL DESCRIPTION</ins>**

**PHYSICAL ADDRESS:  9505 SOUTH CENTRAL EXPRESSWAY, DALLAS COUNTY, DALLAS TEXAS 75241-7324**

**4.3580 ACRES**

**LEGAL:  BLOCK 8010, TRACK 3, VOLUME 2002180/2530, DD08282002 CO-DC, 8010 000 00300 2008010 000**

**TAX ID:  00-00078-443-500-0000**

DocuSign Envelope ID: BCD23135-86C7-41FF-A7EC-0C66E9A88C4D

11/2/2015



# Information About Brokerage Services

*Texas law requires all real estate licensees to give the following information about*
*brokerage services to prospective buyers, tenants, sellers and landlords.*

**TYPES OF REAL ESTATE LICENSE HOLDERS:**
- **A BROKER** is responsible for all brokerage activities, including acts performed by sales agents sponsored by the broker.
- **A SALES AGENT** must be sponsored by a broker and works with clients on behalf of the broker.

**A BROKER'S MINIMUM DUTIES REQUIRED BY LAW (A client is the person or party that the broker represents):**
- Put the interests of the client above all others, including the broker's own interests;
- Inform the client of any material information about the property or transaction received by the broker;
- Answer the client's questions and present any offer to or counter-offer from the client; and
- Treat all parties to a real estate transaction honestly and fairly.

**A LICENSE HOLDER CAN REPRESENT A PARTY IN A REAL ESTATE TRANSACTION:**

**AS AGENT FOR OWNER (SELLER/LANDLORD):** The broker becomes the property owner's agent through an agreement with the owner, usually in a written listing to sell or property management agreement. An owner's agent must perform the broker's minimum duties above and must inform the owner of any material information about the property or transaction known by the agent, including information disclosed to the agent or subagent by the buyer or buyer's agent.

**AS AGENT FOR BUYER/TENANT:** The broker becomes the buyer/tenant's agent by agreeing to represent the buyer, usually through a written representation agreement. A buyer's agent must perform the broker's minimum duties above and must inform the buyer of any material information about the property or transaction known by the agent, including information disclosed to the agent by the seller or seller's agent.

**AS AGENT FOR BOTH - INTERMEDIARY:** To act as an intermediary between the parties the broker must first obtain the written agreement of each party to the transaction. The written agreement must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. A broker who acts as an intermediary:
- Must treat all parties to the transaction impartially and fairly;
- May, with the parties' written consent, appoint a different license holder associated with the broker to each party (owner and buyer) to communicate with, provide opinions and advice to, and carry out the instructions of each party to the transaction.
- Must not, unless specifically authorized in writing to do so by the party, disclose:
  - that the owner will accept a price less than the written asking price;
  - that the buyer/tenant will pay a price greater than the price submitted in a written offer; and
  - any coincidental information or any other information that a party specifically instructs the broker in writing not to disclose, unless required to do so by law.

**AS SUBAGENT:** A license holder acts as a subagent when aiding a buyer in a transaction without an agreement to represent the buyer. A subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first.

**TO AVOID DISPUTES, ALL AGREEMENTS BETWEEN YOU AND A BROKER SHOULD BE IN WRITING AND CLEARLY ESTABLISH:**
- The broker's duties and responsibilities to you, and your obligations under the representation agreement.
- Who will pay the broker for services provided to you, when payment will be made and how the payment will be calculated.

**LICENSE HOLDER CONTACT INFORMATION:** This notice is being provided for information purposes. It does not create an obligation for you to use the broker's services. Please acknowledge receipt of this notice below and retain a copy for your records.

| Scott Brown Commercial | 0389414 | scott@scottbrownproperties.net | (940)320-1200 |
|---|---|---|---|
| Licensed Broker /Broker Firm Name or Primary Assumed Business Name | License No. | Email | Phone |
| | | | |
| Designated Broker of Firm | License No. | Email | Phone |
| | | | |
| Licensed Supervisor of Sales Agent/ Associate | License No. | Email | Phone |
| Joe Bixby | 0457865 | joe@sbpcommercial.com | (940)320-1200 |
| Sales Agent/Associate's Name | License No. | Email | Phone |
| Buyer/Tenant/Seller/Landlord Initials | | 3/8/2018 Date | |

**Regulated by the Texas Real Estate  Commission**            Information available at www.trec.texas.gov

IABS 1-0 Date

**APP. 47**

CAUSE NO.  DC-18-18651

| | | |
|---|---|---|
| CITY OF DALLAS, TEXAS | § | IN THE DISTRICT COURT |
| PLAINTIFF | § | |
| | § | |
| V. | § | |
| | § | |
| BLUE STAR RECYCLING LLC; | § | DALLAS COUNTY, TEXAS |
| ALMIRA INDUSTRIAL AND TRADING, | § | |
| CORP.; CCR EQUITY HOLDINGS | § | |
| ONE, LLC; 9505 S. CENTRAL | § | |
| EXPRESSWAY, *IN REM* | § | |
| | § | |
| DEFENDANTS | § | 191st JUDICIAL DISTRICT |

## MODIFIED TEMPORARY RESTRAINING ORDER

On this, the 21st day of March, 2019, came to be heard the City of Dallas ("City")'s Request for Temporary Restraining Order.  Plaintiff, the City, appeared through its counsel, Jayla Wilkerson. Defendants Blue Star Recycling, LLC and CCR Equity Holdings One, LLC did appear through counsel.

Based on the pleadings on file, the evidence presented, and the arguments of counsel, the Court finds that there is good cause to enter the following order:

IT IS ACCORDINGLY ORDERED that the Temporary Restraining Order requested by the City herein is hereby in all things GRANTED.

IT IS FURTHER ORDERED THAT:

Defendant Blue Star Recycling, LLC ("Defendant") and Defendant's employees, servants, contractors, successors and assignees, and any person(s) acting in concert or as active



EXHIBIT
E

participants with Defendant who receive actual notice of this Order by personal service or otherwise, are immediately enjoined from:

1) placing and allowing to be placed roofing shingles, parts of roofing shingles, wooden pallets or other pieces of wood, and any other material onto and into any part of the stormwater drainage system, including creeks and streams at the property that is the subject of this lawsuit legally described as Block 8010, Tracts 3 and 3.1 and commonly referred to as 9505 and 9527 S. Central Expressway, Dallas, Texas (the " Property"); and

2) performing and allowing to be performed on the Property any waste collection, recycling, or any other industrial activity, without first complying with all relevant federal, state, and local laws, statutes, and regulations, including obtaining all necessary and proper permits required by the laws and ordinances of the City of Dallas; abiding by the conditions and requirements of such permits; and satisfying the requirements of all applicable environmental, nuisance, and zoning laws and ordinances of the City of Dallas.

IT IS FURTHER ORDERED that Defendants, by and through their representatives or counsel, appear before this Court in the 191st Judicial District Courtroom in the Dallas County Courthouse, Dallas, Texas at 11 o'clock a.m. on the third day of April, 2019, and then and there show cause, if any, why this temporary restraining order should not be made a Temporary Injunction, and for all other matters addressed in the City's Petition until the final hearing of this case.

IT IS FURTHER ORDERED that this cause be set for trial on the merits in the 191st Judicial District Courtroom in the Dallas County Courthouse, Dallas, Texas at 9:30 o'clock a.m. on the 24th day of January, 2020.

This Order expires on  April 4 , 2019 at 11:59 p.m. or upon further Order of this Court.

SIGNED AND RENDERED this the 26th day of _March__, 2019 at 1:58 o'clock,

JUDGE PRESIDING

Approved as to form:

___/s/ David D. Davis___
David D. Davis, of Counsel
Atwood McCall, PLLC
4144 N Central Expwy., Ste. 910
Dallas, Texas 75204
Davis@atwoodmccall.com
Counsel for CCR Equity Holdings One, LLC

Approved as to form:

___/s/ Jayla Wilkerson___
Jayla Wilkerson
Dallas City Attorney's Office
1500 Marilla St., Ste 7DN
Dallas, Texas 75201
Jayla.wilkerson@dallascityhall.com
Counsel for the City of Dallas

CAUSE NO. DC-18-18651

| | | |
|---|---|---|
| CITY OF DALLAS, TEXAS | § | IN THE DISTRICT COURT |
| PLAINTIFF | § | |
| | § | |
| V. | § | |
| | § | |
| BLUE STAR RECYCLING LLC; | § | DALLAS COUNTY, TEXAS |
| ALMIRA INDUSTRIAL AND TRADING, | § | |
| CORP.; CCR EQUITY HOLDINGS | § | |
| ONE, LLC; 9505 S. CENTRAL | § | |
| EXPRESSWAY, *IN REM* | § | |
| | § | |
| DEFENDANTS | § | 191st JUDICIAL DISTRICT |

## **TEMPORARY INJUNCTION**

**ON THIS DAY,** the City of Dallas, ("Plaintiff"), and Defendants, Blue Star Recycling LLC ("Blue Star") and CCR Equity Holdings One, LLC, ("Defendants") appeared before this Court on Plaintiff's Motion for Temporary Injunction (the "Injunction"). Upon consideration of the pleadings and the arguments of the parties, the Court enters this Temporary Injunction.

**IT IS ORDERED** that Defendant Blue Star shall not engage in the grinding or processing of any materials, including but not limited to asphalt shingle materials, on the Property, and that Defendant Blue Star shall remove all equipment and machinery on the Property for the purpose of grinding shingles. This does not prohibit the activities necessary to carry out the management of or removal of the material as provided below.

**IT IS FURTHER ORDERED** that Defendant Blue Star shall not receive or accept onto the Property any asphalt shingles, wood pallets, or other waste material on the Property during the pendency of this Order, but may bring machinery, fuel, and other material necessary for the management and the removal of the shingles and other material from the Property as provided below.

**IT IS FURTHER ORDERED** that on or before ninety (90) days from the date of this

Order Page 1 of 3



order, Defendant Blue Star shall remove all asphalt roofing shingles and ground material from shingles, and wood pallets on the Property and all debris, waste, refuse, and other materials associated with the items listed above, in a manner and by means which are compliant with all applicable laws and regulations, within the jurisdiction of this Court ("Removal Process").   In carrying out this provision of the Order, Defendant Blue Star may bring machinery, materials, and fuel on the Property, and take other actions necessary or required to remove the materials.

**IT IS FURTHER ORDERED** that a status meeting will be held sixty (60) days from the date of this order at which the Plaintiff and Defendants, or their counsel, will be present to discuss the status of the removal of the materials from the Property with the Court and the estimated schedule for completion.

**IT IS FURTHER ORDERED** that Defendant Blue Star shall ensure that all work toward compliance with this Order is performed in a good and workmanlike manner, and only performed Monday through Friday of each week between the hours of 7:00 a.m. and 7:00 p.m.

**IT IS FURTHER ORDERED** that Defendant Blue Star shall make the Property, including the interior of the Property, available for inspection by City employees to determine compliance with this Temporary Injunction on the following dates and time, unless otherwise agreed in writing by the Parties or order of the Court: **May 6, 2019 and June 5, 2019, from 9:30 a.m. to 11:30 a.m.**

**IT IS FURTHER ORDERED** that Defendant Blue Star and Plaintiff shall discuss any regulatory or permitting issues and attempt to resolve them in order to carry out the Removal Process.  Any disputes that cannot be resolved between the Parties shall be referred to the Court for hearing.

The parties agree that service of this Injunction is waived.

No bond is required to be posted by Plaintiff, City of Dallas.

Order Page 2 of 3

The *Permanent Injunction Hearing and Full Trial on the Merits* is set for January 27, 2020 at ~~9:00~~ 9:30 a.m. in the 191st Judicial District Court of Dallas County, Texas.

Signed this 10th day of April, 2019.

at 4:04pm

_____
PRESIDING JUDGE

Order Page 3 of 3

```
 1                       REPORTER'S RECORD
                       VOLUME 1 OF VOLUME 1
 2              TRIAL COURT CAUSE NO. DC-18-18651-J

 3   THE CITY OF DALLAS          )   IN THE DISTRICT COURT
                                 )
 4   VS                          )   DALLAS COUNTY, TEXAS
                                 )
 5   BLUE STAR RECYCLING         )   191ST DISTRICT COURT

 6

 7

 8

 9   _____

10                   Motion for Contempt
                            and
11                   Status Conference
     _____
12

13

14        On the 22nd day of November, 2019, a hearing was

15   heard in the above-entitled and numbered cause, and

16   the following proceedings were had before the

17   Honorable Gena Slaughter, Judge Presiding, held in the

18   191st District Court, Dallas County, Texas:

19

20

21

22   _____

23              Melba D. Wright, Texas CSR #4666
     Official Court Reporter, 191st Judicial District Court
24     Proceedings reported by Stylus stenotype machine;
        Reporter's Record produced by ProCAT Winner XP
25              computer-assisted transcription
```

EXHIBIT

**G**

APP. 54

1                    A P P E A R A N C E S:

2      ATTORNEYS FOR THE PLAINTIFF:

3      Mr. Andrew Gilbert
       SBOT #:  24093367
4      Ms. Jayla Wilkerson
       SBOT #:  24093367
5      Dallas City Attorney's Office
       Community Prosecution Section
6      1500 Marilla Street, Suite 7DN
       Dallas, Texas  75201
7
       (214) 490-3423
8
       ATTORNEYS FOR THE DEFENDANTS:
9
       Mr. Robert McNiel
10     SBOT #:  24043814
       Calhoun Bella & Sechrest, LLP
11     325 N. Saint Paul Street, Suite 2300
       Dallas, Texas  75201
12
       (214) 981-9200
13
       Mr. David D. Davis
14     SBOT #:  00790568
       Law Office of David D. Davis, PC
15     4144 N. Central Expressway, Suite 910
       Dallas, Texas  75204
16
       (972) 639-3440
17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

<u>Index</u>

<u>Volume 1</u>

Motion for Contempt
and
Status Conference

November 22, 2019

| <u>PROCEEDINGS</u> | | | | <u>PG</u> | <u>VOL</u> |
|---|---|---|---|---|---|
| Announcements | | | | 4 | 1 |
| Reporter's Certificate | | | | 34 | 1 |

| <u>PLAINTIFF'S WITNESSES</u>: | <u>DX</u> | <u>XE</u> | <u>RD</u> | <u>RX</u> | <u>VOL</u> |
|---|---|---|---|---|---|
| Maricela A. Rangel | 11 | -- | -- | -- | 1 |
| Marsha Jackson | 15 | -- | -- | -- | 1 |

| <u>DEFENDANT'S WITNESSES</u>: | <u>DX</u> | <u>XE</u> | <u>RD</u> | <u>RX</u> | <u>VOL</u> |
|---|---|---|---|---|---|
| None. | | | | | |

<u>EXHIBIT INDEX</u>

| <u>PLAINTIFF'S</u> | <u>OFFERED</u> | <u>ADMITTED</u> | <u>VOL</u> |
|---|---|---|---|
| None. | | | |

| <u>DEFENDANT'S</u> | <u>OFFERED</u> | <u>ADMITTED</u> | <u>VOL</u> |
|---|---|---|---|
| None. | | | |

```
1                     I will find Blue Star Recycling, LLC,

2    in contempt of Court for failure to comply with this

3    Court's temporary injunction.

4                     I will order it to pay a coercive con

5    -- what we call a coercive contempt fine of $500 a day

6    per violation, and there were multiple violations

7    listed.

8                     Counsel, I will -- we'll speak in -- we

9    can think speak after the hearing's over.  The order

10   needs to be fine-tuned some.  It doesn't have per

11   violation, and I think you need to list each of the

12   violations that you believe should be fined for.

13                    Additionally, it also references

14   permanent injunction -- complies with permanent

15   injunction on the second page.  So -- but we can get a

16   better form of order at a later date or, you know,

17   today or tomorrow -- excuse me -- today or next week.

18                    MR. DAVIS:  All right.

19                    THE COURT:  So at this time -- you may

20   be seated.

21                    So counsel, the next issue was that the

22   temporary injunction had only been ordered as against

23   Blue Star Recycling, LLC, in light of the fact that

24   they were the leaseholder for these two separate

25   properties, and that they were the ones that had the
```

1   legal right to control, include/exclude people from

2   the property, et cetera, therefore, at that time, the

3   landowners -- I did not order injunction against the

4   landowners, in light of the fact that they had --

5   didn't have the legal right to enter the property or

6   remediate the property at the time.

7                   However, obviously, with the joint

8   status update in this hearing, the situation has

9   changed.  So what is -- where are we now?

10                  MS. WILKERSON:  Thank you, Your Honor.

11  At this time, the city had issued notice letters to

12  both property owners -- and let me check and I'll have

13  the date for you on that.  And we requested that they

14  remove the materials themselves, and that was on --

15  I'm sorry -- the 22nd of October, Your Honor.

16                  THE COURT:  Right.  And this Court --

17  I'll note that there was note made to the Court of the

18  city's intent to exercise remedies, pursuant to

19  Section 54.020 of the Texas Local Government Code in

20  order to pursue action as -- cleaning and then as

21  against the individual property owners; is that

22  correct?

23                  MS. WILKERSON:  That's correct, Your

24  Honor.  And so the notice was to put the property

25  owners on notice that we intended to do that and to

1   specific proposal to the city that we can present to

2   the Court.  And along those lines, what I would

3   request is that the Court go ahead and provide some

4   mechanism to mediate and try to resolve this jointly.

5                    THE COURT:  Okay.

6                    MR. MCNIEL:  The problem of this size

7   is going to require the assistance of the city to some

8   extent.

9                    THE COURT:  Okay.  And I think that

10  mediation, an attempt to get everybody in one room

11  with somebody, you might be able to negotiate, help

12  negotiate a response, in light of your concern that

13  your client cannot -- my understanding is what you

14  just said, do it all on their own, is probably a good

15  idea.  I can issue a mediation order, in light of

16  that.  I'm not sure who I can -- I'll appoint at this

17  point, but I'll find somebody.

18                    So at this point in time, I will issue

19  a mediation order as between the City of Dallas and

20  CCR Equity Holdings One, LLC.  I am not going to

21  include Almira Industrial in that order, in light of

22  the fact that they are in substantive compliance, and

23  that the city and Mr. McNiel, on behalf of his client,

24  have agreed to work out whatever remediation is of the

25  last stuff, there isn't a lot left to do, I

31

```
 1   understand, so -- of that, and then I would just ask,
 2   obviously, that CCR Equity and the city obviously have
 3   the city's best interest in mind, and everybody's best
 4   interest in mind, in trying to get this remediated.  I
 5   do understand -- and you can be seated -- I do
 6   understand that this has been going on for a long
 7   time.  Unfortunately, it's a bad situation that got
 8   out of hand, and we're trying on the back end to try
 9   to clean it up, without the corporate entity who was
10   responsible for creating it, having the financial
11   wherewithal or ability to do so, which has left
12   everybody else on the back end, and the property
13   owners who had no part in creating this.  The City who
14   had no, you know, didn't have a role in creating it,
15   trying to clean up the mess, as it were.  Counsel?
16               MR. DAVIS:  Yes.  I also do want to
17   add, Your Honor, because we have had the opportunity
18   to share this with the City of Dallas Attorney's
19   Office.  The result that we're not able to do anything
20   to date is not from a lack of trying.
21               THE COURT:  Right.
22               MR. DAVIS:  The client has, in fact,
23   reached out and spoke to people at the national level,
24   the national manufacturers, the national recyclers,
25   we've done it locally.  Without getting into the
```