IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARSHA JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-00967-M |
| | § | |
| BLUE STAR RECYCLING, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are original and supplemental Motions to Dismiss of Defendants CCR Equity Holdings One, LLC ("CCR One"), CCR One member Cabe Chadick, and the City of Dallas ("the City") [ECF Nos. 19, 22, 35, 59, 63, and 64]. This Order addresses only the Supplemental Motion to Dismiss of CCR One [ECF No. 59], which Chadick and the City of Dallas joined [ECF Nos. 63, 64]. The Supplemental Motion of CCR One, Joined by Defendants Chadick and the City, is GRANTED, and Plaintiff's RCRA claims against Defendants CCR One, Chadick, and the City of Dallas are DISMISSED with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1).

### I.   Background

CCR One leased its property to Blue Star Recycling, LLC. Almira Industrial and Trading Corp. leased an adjacent property to Blue Star, and Blue Star used these properties to recycle roof shingles [ECF No. 13 at ¶ 6]. Plaintiff alleges that the roof shingles were improperly handled and stored, so as to create "Shingle Mountain." The City of Dallas filed a state court lawsuit against Blue Star, CCR One, and Almira, in December of 2018. Plaintiff filed this suit in April of 2020, against CCR One, Chadick, and Blue Star, originally only asserting claims under a citizen suit

provision of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B). Plaintiff then filed an Amended Complaint, adding claims against the City of Dallas, under RCRA § 6972(a)(1)(B), and pursuant to 42 U.S.C. § 1983, contending that the City of Dallas had engaged in disparate treatment based on race and ethnicity in violation of the 14th Amendment to the United States Constitution. CCR One, Chadick, and the City of Dallas moved to dismiss the Amended Complaint. In its Response to CCR One's Motion to Dismiss, Plaintiff explained that it did not include Almira as a Defendant because "Almira has already removed the solid waste from its property and is not needed for RCRA relief for the conditions on CCR One's property."[1] [ECF No. 27 at 13]. Pursuant to a settlement, a final judgment was recently entered in the state court suit between the State of Texas, the City of Dallas, and CCR One, requiring that all solid waste be removed from the CCR One property. CCR One, Chadick, and the City of Dallas then supplemented their motions to dismiss, claiming that factual developments from the state court final judgment had rendered Plaintiff's RCRA claims against them moot.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). Considering Rule 12(b)(1) motions before

---

[1] The state court final judgment only applies to CCR One's property [ECF No. 61-1 at 1 n.1]. In her Amended Complaint, Plaintiff makes two requests regarding the Almira property: (1) that the Court prevent its future use as a landfill, for shingles recycling, or for any other industrial purpose, and (2) that the court order the property be re-zoned by the City of Dallas [ECF No. 13 at 40]. Because neither of these requests seek relief available to Plaintiff under § 6972(a)(1)(B), and Almira is not a party to this suit, the Court focuses only on the property which relates to CCR and Chadick.

other Rule 12(b) motions "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. A court should grant a motion under 12(b)(1) only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. *Lane v. Halliburton,* 529 F, 3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)). "Dismissals for lack of Constitutional standing are granted pursuant to Rule 12(b)(1)." *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017) *(citing Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)). The court may find a plausible set of facts supporting subject matter jurisdiction by considering (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* (quoting *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996) (internal citations omitted)). If a controversy is moot, a federal court lacks subject matter jurisdiction. *Carr v. Saucier*, 582 F.2d 14, 15–16 (5th Cir. 1978). As the party asserting jurisdiction, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss. *Ramming,* 281 F.3d at 161 (5th Cir. 2001).

### III.   Analysis

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). Plaintiff brings suit under RCRA's citizen suit provision, 42 U.S.C. § 6972(a)(1) which provides that "any person may commence a civil action on his own behalf," and thus empowers citizen plaintiffs to act as private attorneys general on behalf of themselves and other citizens. *Consolidated Companies, Inc. v. Union Pacific R. Co.,* 499 F.3d 382, 385 (5th Cir. 2007). To

3

prevail, a citizen suit plaintiff bringing claims under § 6972(a)(1)(B) must establish the following:

> 1. The defendant is a person, including, but not limited to, one who was or is a generator of solid or hazardous waste, or one who was or is an owner or operator of a solid or hazardous waste treatment, storage or disposal facility.
> 2. The defendant has contributed to, or is contributing to, the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and
> 3. The solid or hazardous waste may present an imminent and substantial endangerment to human health or the environment.

42 U.S.C. § 6972(a)(1)(B).

1. The Amended Complaint

In her Amended Complaint, Plaintiff alleges that asphalt shingles at the CCR One property are solid waste and that CCR One, Chadick, and the City of Dallas contributed to the use of the CCR One property as an illegal solid waste landfill [ECF No. 13 at ¶¶ 37–52, 67–80]. Plaintiff also alleges that the storage and processing of the shingle materials constitutes a substantial endangerment to human health and the environment. Plaintiff explains that the U.S. Occupational Safety and Health Act (OSHA) requires the prevention and control of dust emitted during operations involving shingle material, and prohibits allowing large quantities of shingle material to reach groundwater, water courses, and sewage systems. Plaintiff pleads that the City of Dallas found that the use of the CCR One property constitutes a substantial danger to health and the environment, including the following violations;

> a. Discharging industrial waste into the storm sewer;
> b. Discharging one or more air contaminants in such concentration and of such duration as are or may tend to be injurious to or adversely affect human health or welfare, animal life, vegetation, or property; or as to interfere with the normal use or enjoyment of animals, vegetation, and property;
> c. Causing, suffering, allowing, or permitting visible emissions from an unpermitted source;
>    . . .
> e. Permitting any yard, grounds or premises belonging to or controlled or occupied by the owners and operator to become, from any cause, nauseous,

4

      foul, offensive or injurious to the public health, or unpleasant and disagreeable to adjacent residents or persons;
  f. Carrying on a trade, business, or occupation within the City that is injurious to the health of those who reside in the vicinity, or suffering any substance which shall have that effect to remain on the owner/operator's premises, in the owner/operator's possession, or under the owner/operator's control;
  g. Failure to comply with a stormwater permit;
  h. Discharging or allowing or permitting the discharge of industrial waste into the stormwater drainage system;
  i. Discharging or allowing or permitting the discharge of asphalt base material into the stormwater drainage system;
  j. Discharging or allowing or permitting the discharge of a harmful quantity of dust, resulting from grinding, cutting, or storage of materials, into the stormwater drainage system;
  k. Failure to employ best management practices to control and minimize the discharge of materials and substances handled, stored, and generated by Blue Star into the stormwater drainage system;

[*Id.* at ¶ 56]. Plaintiff alleged threats to her own health and safety in the following paragraphs of the Amended Complaint.

> 57. The illegal landfill is an open dump that attracts varmints, vermin and other animals creating a threat to the health and safety of Ms. Jackson and her neighbors.
> 58. The illegal landfill is posing a threat to the health of Ms. Jackson and to others residing near Shingle Mountain. The debris stored on site is an open dump without cover. The debris causes fiber, glass, and other particles to permeate the air and blow onto adjoining properties such as Ms. Jackson's home. The black dust caused by the illegal landfill creates breathing problems for Ms. Jackson as this black dust had [sic] entered her home and property. Other citizens have complained of poor air quality resulting in black dust permeating the air they were breathing.
> 59. The City of Dallas has received several complaints from Ms. Jackson and other individuals residing near Shingle Mountain. The nature of the complaints made to the City of Dallas are regarding poor air quality and odor at their properties surrounding Blue Star's illegal landfill. In particular, the residents have complained of poor air quality resulting in black dust permeating the air they were breathing.

[*Id.* at ¶¶ 57–59].

2. <u>Issues Alleged to be Outside the Scope of the State Court Final Judgment</u>[2]

(i) Plaintiff's Property

Plaintiff contends that the state court final judgment does not moot her RCRA claim because it does not provide for remediation of her property. On the other hand, CCR One, Chadick, and the City of Dallas argue that Plaintiff did not plead an imminent and substantial endangerment to her property.[3]

To have standing to sue under RCRA, Plaintiff must have suffered an injury in fact, by showing actual or imminent invasion of a legally protected interest, which is concrete and particularized. *Consolidated Companies, Inc.*, 499 F.3d at 385. While Plaintiff alleged that some of the debris from Shingle Mountain "blow[s] onto adjoining properties such as Ms. Jackson's home," there is no allegation in the Amended Complaint that waste deposited on her property is or will imminently result in imminent and substantial endangerment of Plaintiff. Plaintiff alleged imminent and substantial endangerment from the air quality at her property, and that the poor air quality was the result of debris at the "open dump" at the CCR One Property. The state court final judgment orders the contents of the "open dump," the asphalt shingles, to be cleared and removed in full [ECF No. 61-1 at 7]. Plaintiff did not plead an imminent and substantial injury from conditions at her property not addressed by the state court final judgment.

---

[2] In its response to CCR One's original Motion to Dismiss the Amended Complaint, Plaintiff stated that she was not seeking RCRA relief against Almira, because it had "already removed the solid waste from its property," suggesting that relief as to Almira was unnecessary. [ECF No. 27 at 13]. That appears contradictory to Plaintiff's position that RCRA relief beyond the removal of all solid waste is needed and available as to CCR One's property.

[3] CCR One, Chadick, and the City also argue that Plaintiff did not mention such imminent and substantial endangerment in the notice required by 42 U.S.C. § 6972(b)(2)(A), and sent by Plaintiff to Dallas on November 26, 2019, and to CCR One and Chadick on December 4, 2019. Because Plaintiff did not plead an imminent and substantial endangerment based on her property, the notice issue need not be reached.

(ii) Re-Zoning and Potential Future Uses of the Property

Plaintiff argues that her RCRA claims are not moot because the state court final judgment does not "eliminate the industrial zoning and other actions to prevent the site from being used again for the illegal storage of solid waste." [ECF No. 66 at 5]. On Page 40 of the Amended Complaint, Plaintiff requests that the Shingle Mountain properties be re-zoned for use compatible with single family homes, and that the Court order that the properties cannot be used in the future as a landfill, or for shingles recycling, or other industrial purpose [ECF No. 13 at 40]. Her argument rests on the idea that the earlier case of *Cox v. City of Dallas* granted such relief. *Cox v. City of Dallas, Texas*, 3:98–CV–0291–H, 1999 WL 33756552 (N.D. Tex. Aug. 4, 1999), *aff'd*, 256 F.3d 281, 288 (5th Cir. 2001). *Cox* was brought by City residents living near adjacent open dumps, under § 6972(a)(1)(B). The district court required the City to (1) erect a fence around the sites, and monitor the condition of the fence until the waste was removed and no hazardous or nuisance conditions remained, (2) monitor the sites for methane gas and fire hazards until the waste was removed, (3) monitor the sites for open dumping, and take steps necessary to prevent and remove open dumping, until all wastes were removed, (4) remove all waste in compliance with the law, and (5) perform the removal in a manner not harmful to the residents in adjoining areas. *Cox v. City of Dallas, Texas*, 3:98–CV–0291–H, 1999 WL 33756551, at *1-3 (N.D. Tex. Aug. 27, 1999). The district court in *Cox* also enjoined the City "from issuing any permits, licenses, zoning decisions, or any other regulatory action which will contribute to the handling, storage, treatment, transportation, or disposal of any solid or hazardous waste at the sites unless the action is

7

required to implement the Court approved plan for compliance with this judgment." *Cox*, 1999 WL 33756551, at *2.

It should be noted that the Court in *Cox* did not order the re-zoning of the property. It prohibited the City from issuing a zoning decision that would interfere with the corrective measures it had ordered. Here, there is no suggestion by Plaintiff that implementation of the state court final judgment and removal of solid waste on the CCR One property requires re-zoning, and the Court has found no authority for it to order re-zoning pursuant to 42 U.S.C. § 6972(a)(1)(B). Limits on future use of the CCR One property, after removal of the solid waste, are not available to Plaintiff under § 6972(a)(1)(B). A private party can only bring a § 6972(a)(1)(B) suit if the party can show the existence of solid waste which may present an imminent and substantial endangerment to human health or the environment. "The meaning of this timing restriction is plain: An endangerment can only be 'imminent' if it 'threaten[s] to occur immediately[.]' " *Meghrig*, 516 U.S. at 486. Whether there is an imminent endangerment is a fact specific inquiry that, after the solid waste is removed, would depend on new facts not currently before the Court. The Court cannot find now that any future use of the CCR One Property as a landfill site, for shingles recycling, or for any other industrial purpose will present imminent and substantial harm to Plaintiff.

(iii) Contaminated Soil and Water

Plaintiff also seems to suggest that contaminated soil and water on the site presents an imminent and substantial endangerment for which further remediation, not addressed by the state court final judgment, is needed [ECF No. 66 at 5–6]. But CCR One, Chadick, and the City contend that, even assuming such contamination is not addressed by the state court final

8

judgment,[4] Plaintiff lacks standing to bring a RCRA claim based on alleged water and soil contamination [ECF No. 70 at 7]. Nowhere does Plaintiff allege that she has been injured, or faces imminent injury, as a result of contaminated water or soil. She expressly alleges imminent injury based only on the manner of storage and presence of the asphalt shingles, and the resulting dust [ECF No. 57–59]. She does not plead an injury in fact based on contaminated water or soil. So, she has no standing to pursue such claims, even if they were not moot, as the Court finds they are.

### 3. Harms Addressed by the Judgment

Plaintiff argues that the state court final judgment does not sufficiently (1) ameliorate present harms, nor (2) obviate the risk of future imminent harms.

---

[4] Plaintiff suggests in her Response that contamination has taken place in two ways: (1) "The illegal solid waste landfill has contaminated the stormwater and the soil on the site[,]" and (2) "There is drainage from the unprocessed asphaltic shingle material in a pooled area of water on site that is dark amber in color and suggestive that petroleum-based compounds may be present." [ECF No. 66 at 5]. RCRA's definition of solid waste includes "any . . . discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities . . . ." 42 U.S.C.A. § 6903(27). Stormwater and soil, contaminated by solid waste, can present an imminent and substantial endangerment, and a RCRA claim can be stated based on these conditions. *See Raritan Baykeeper, Inc. v. NL Industries, Inc.*, 76 Env't. Rep. Cas. (BNA) 1396, 2013 WL 103880, at *23 (D. N.J. 2013); *United States v. California Dep't of Transportation,* 767 F. Supp. 2d 1012, 1027 (N.D. Cal.2011) (finding a defendant liable for damage to a lake due to "discharges of lead, copper, and zinc" from runoff from a boulevard); *Substation K, Inc. v. Kansas City Power & Lighting Co*., 2019 WL 2411439, at *4 (W.D. MO. June 7, 2019) (finding that a plaintiff had sufficiently pled a claim under 6972(a)(1)(B) where it alleged "disposal of hazardous waste and solid waste . . . has contaminated soil, surface water, and groundwater"); [ECF No. 61-1 at 5] (stating that "Solid Waste . . . includes petroleum and petroleum waste products"); *Waldschmidt v. Amoco Oil. Co*., 924 F. Supp. 88, 90–91 (C.D. Ill. 1996); *K-7 Enterprises, L.P. v. Jester*, 2007 WL 9724523, at *5 (E.D. Tex. Feb. 9, 2007). In the state court final judgment, the City of Dallas agreed to remove and dispose of all solid waste materials [ECF No. 61-1 at 6–7].

Plaintiff cites to the Motion for Severance and Entry of Judgment [ECF No. 67 at 58], filed by the City and CCR One in the state court suit, and argues that the Motion shows that there is no requirement to remediate imminent and substantial endangerment presented by contaminated water and soil on the site. But that Motion simply provides that the final judgment does not require cleanup related to "**undiscovered** releases, contamination, and/or violations." [*id*.] (emphasis added). Certainly, Plaintiff did not and could not claim an imminent and substantial endangerment based on anything yet to be discovered.

9

### A. Present Harms

Plaintiff contends that the state court final judgment does not moot the case because the shingles solid waste has not been fully removed, and because the state court final judgment does not guarantee a cleanup that meets RCRA standards. However, federal courts have often dismissed a plaintiff's RCRA claim prior to the completion of agreed or mandated cleanup activity. *See W. Coast Home Builders, Inc. v. Aventis Cropscience USA Inc.*, 2009 WL 2612380, at *4 (N.D. Cal. Aug. 21, 2009) ("there is no basis for the relief plaintiff seeks because the contamination is already being addressed"); *Northern California River Watch v. Fluor Corporation*, 2014 WL 3385287, at *9 (N.D. Cal. July 9, 2014) ("[plaintiff] failed to allege that the ongoing . . . remediation plans are insufficient to address the endangerment, such that an imminent threat exists."); *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.,* 704 F.3d 413, 431 (5th Cir. 2013) (holding, in a CERCLA case, that where remedial "efforts have been ongoing, and absent a clear reason . . . to find them deficient, we see no error in the district court's conclusion that it could grant no further relief to the plaintiff beyond what is already being done.").

In *87th St. Owners Corp. v. Carnegie Hill–87th Street Corp.*, the district court well analyzed the issue:

> [T]he Court may not only "restrain" a defendant from doing whatever it is doing with hazardous waste that creates the environmental danger, but may also order it take any "action" that "may be necessary" to abate that danger. . . . Broad as these powers may be, however, they are granted for a particular purpose. The Court may only "restrain" the hazardous waste handling or disposal that "may present an imminent and substantial endangerment to health or the environment," or order actions that may be "necessary" to eliminate that danger. Here, since the actions that allegedly created the danger are in the past, and there is no allegation that defendant is currently engaged in any action that presents a risk to public health or the environment, there is nothing to "restrain."

251 F. Supp. 2d 1215, 1219 (S.D. N.Y. 2002).  Plaintiff argues that the state court final judgment does not require a cleanup that meets a RCRA standard because "there is nothing in the [state court final judgment] that suggests the remedial goal is ameliorating present or obviating the risk of future imminent harms." [ECF No. 66 at 18].  The reference to a RCRA "standard" is confusing.  A court has the power to require that an imminent and substantial endangerment to health be removed.  *See 87th St. Owners Corp.*, 251 F. Supp. 2d at 1221.  The state court final judgment requires the removal of all solid waste on the property, and Plaintiff's claim arises exclusively from allegations regarding the effects of the solid waste at Shingle Mountain.  Further, the state court final judgment requires that the disposal be done in accordance with all local, state, and federal rules and regulations, which would include RCRA [ECF No. 61-1 at 6].

Plaintiff has not identified an action that this Court could take "that would improve the situation in some way." *87th St. Owners Corp.*, 251 F. Supp. 2d at 1221.  This Court does not have a proper role in the cleanup being undertaken.  *See Davis Bros., Inc. v. Thornton Oil Co.*, 12 F. Supp. 2d 1333, 1338 (M.D. Ga. 1998) ("[T]he proposed remedy of injunctive relief is moot because Conoco has already agreed to remediate the site and pay for any costs associated with the cleanup, and the state is overseeing the cleanup more effectively than the court ever could.  Thus, the RCRA claim fails on the merits, and is also moot.").

## B.  Future Harms

Plaintiff argues that there is no provision in the state court final judgment for remediating any contamination found by an Environmental Site Assessment, which will be done after the cleanup is completed.  However, any concerns stemming from a future assessment, or based on potential future activity, are not ripe.  *87th St. Owners Corp.*, 251 F.Supp.2d at 1221 ("If plaintiff is concerned with what might need to be ordered to deal with some danger that might exist at

some unspecified point in the future, should [the state agency] abandon the systems it has put in place to ameliorate the risks posed by the oil contamination, or with the possibility that improved remedial measures might become available some day to effectuate a more fundamental clean-up (which [the state agency] might or might not undertake), its suit is premature. Plaintiff can bring an action when and if these events come to pass, and when and if plaintiff can identify actions that defendant can be ordered to take to remove the danger.").

## IV. Conclusion

For the reasons discussed above, the Supplemental Motion to Dismiss of CCR One [ECF No. 59], which Chadick and the City of Dallas joined [ECF Nos. 63, 64], is GRANTED. Plaintiff's RCRA claims against CCR One, Chadick, and the City of Dallas are DISMISSED with prejudice as moot, thereby resolving all claims against these parties, except the Fourteenth Amendment claim against the City.

**SO ORDERED**.

March 26, 2021.

_____
BARBARA M. G. LYNN
CHIEF JUDGE